Michelle DEWALT, Plaintiff–Appellee,

v.

Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellant.

No. 91–5199.

United States Court of Appeals,
Third Circuit.

Argued Sept. 19, 1991.

Decided April 24, 1992.

Rehearing Denied May 21, 1992.

Mary K. Doyle (Argued), Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant.

Alan Polonsky (Argued), Polonsky & Polonsky, Collingswood, N.J., for plaintiff-appellee.

BEFORE: BECKER and HUTCHINSON, Circuit Judges, and FULLAM, Senior District Judge.*

OPINION OF THE COURT

FULLAM, Senior District Judge.

Plaintiff-appellee, Michelle Dewalt, established her entitlement to an award of counsel fees under the Equal Access to Justice Act, 28 U.S.C. § 2414, after an eight-year struggle to obtain SSI benefits under Title XVI of the Social Security Act. The district court awarded fees calculated at the rate of $136.02 per hour. The narrow but important issue presented on this appeal is whether that hourly rate exceeds the maximum permissible under the statute.

The relevant statute provides:

The amount of fees awarded under this subsection shall be based upon *prevailing market rates* for the kind and quality of services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the

---

* The Honorable John P. Fullam, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

court determines that *an increase in the cost of living* or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

The question to be decided is which of several possible methods of determining "an increase in the cost of living" is appropriate for upward adjustment of the $75 per-hour statutory cap on attorney's fees.

Beginning in the World War I era, the Bureau of Labor Statistics has published a series of indexes of consumer prices based upon its collection of data through various sampling techniques. Regular publication of a national index began in 1921, under the general title "Cost of Living". In 1940, the name was changed to "Indexes of the Cost of Living of Wage–Earners and Lower–Salaried Workers in Large Cities", and in 1945, the name was changed to "Consumer Price Index Moderate Income Families in Large Cities". *See B.L.S. Handbook of Methods*, at p. 185. In 1978, the coverage was broadened to include all urban consumers, not just wage-earners. This CPI–U, or CPI–ALL as it is commonly referred to, takes into account the buying patterns of professional and salaried workers, part-time workers, the self-employed, the unemployed, and retired persons, as well as wage-earners and clerical workers, and reflects the purchasing habits of approximately 80% of the non-institutionalized population of the United States. *See The Consumer Price Index: 1987 Revision*, p. 1; *B.L.S. Handbook of Methods*, p. 154. At some risk of over-simplification, it can be stated that the CPI–ALL incorporates data covering several hundred categories of items, separated into 69 expenditure classes in 7 general categories of expenses: food and beverages, housing, apparel and upkeep, transportation, medical care, entertainment, and other goods and services.

Beginning in 1986, the "other goods and services" category was further refined to include a separate sub-category for personal services, including legal services. The all-items CPI indexes separately record price levels on a national basis, on regional bases, and for 29 local areas. But the legal services component is calculated only on a national basis.

If the statutory cap of $75 per hour had been adjusted upward, in the present case, on the basis of the CPI–ALL index for Southern New Jersey, the maximum rate would have been increased to $105.91 per hour, yielding a total award of $2,965.48. The district court determined, however, that the statutory maximum should be adjusted on the basis of the "personal services" component of the CPI, and on that basis awarded fees at the rate of $136.02 an hour, for a total of $3,308.56.[1] Although the dollar amount in dispute in this case is not great, appellant, understandably, seeks a definitive ruling because of the aggregate impact of attorney's fee awards in other similar cases.

## I. SCOPE OF REVIEW

We review attorney's fee awards under the EAJA for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 572, 108 S.Ct. 2541, 2553–54, 101 L.Ed.2d 490 (1988). But the district court's interpretation and application of the statutory cap presents a question of law, as to which our review is plenary. Or, as it is sometimes expressed, an abuse of discretion occurs "when the trial court uses improper standards or procedures in determining fees, or if it does not properly identify the criteria used for such determination". *Silberman v. Bogle*, 683 F.2d 62, 65 (3d Cir.1982).

## II. DISCUSSION

Congress has determined that attorney's fees awarded under the EAJA are to be based upon "prevailing market rates", but that no fee may be awarded "in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceed-

---

1. For services rendered before 1986, the court applied the "other goods and services" index since the separate index for legal services did not become available until 1986.

ings involved, justifies a higher fee". It is clear that the district court increased the statutory cap from $75 per hour to $136.02 per hour solely on the basis of its determination of the level of "increase in the cost of living"; there is no contention that the record justifies an increase on the basis of any "special factor".

The narrow issue presented is whether the statute permitted the district court to calculate the "cost of living" increase solely on the basis of the personal-services component of the consumer price index. Although the thoughtful and perceptive opinion of the district court sets forth many cogent arguments in support of that position as a policy matter ("beans, corn, and hamburger may have appreciated less than an hour of lawyer's time, but plaintiffs must shop in the legal market, not the supermarket", 756 F.Supp. 195, 201), we have concluded that Congress intended a different approach.

We start with the language of the statute itself. Fees are to be calculated at "prevailing market rates," but the $75 per-hour cap can be raised only on the basis of an increase in "the cost of living". If only the personal services component of the CPI is used, then the statutory cap is being increased primarily on the basis of increases in prevailing market rates, rather than the overall cost of living. But plainly, if Congress had intended that result, the statute would have provided that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an *increase in prevailing market rates* ... justifies a higher fee". It is not the province of the judiciary to re-write the statute in that fashion. Congress obviously did not equate "cost of living" with "cost of legal services", or it would have said so.

The district court concluded that Congress intended, by its "cost of living" reference, to provide successful claimants such as appellee with the same purchasing power in the legal-services market as $75 would have provided in 1981, when the $75 limitation was first imposed. We believe, on the contrary, that Congress was expressing its concept of what a "reasonable" fee ought to be. Congress decided that it was unwilling to recognize as reasonable any fee in excess of $75 per hour, based on the purchasing power of a dollar in 1981. The reasonableness of a fee, as between lawyer and client, takes into account general purchasing power of money—the lawyer's cost of living, as well as the client's. And when Congress provided for an upward "cost of living" adjustment to the cap on such fees, it recognized the general impact of inflation upon the purchasing power of a dollar—in the hands of the lawyer, the client, or anyone else.

Our construction of the statute is consistent with Supreme Court admonition:

We do not think Congress meant that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour (adjusted for inflation) then that market-minimum rate will govern instead of the statutory cap. To the contrary, the 'special factor' formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 2553–54, 101 L.Ed.2d 490 (1988).

Although the precise holding of the Court in that case dealt with the "special factor" of limited availability of qualified attorneys to handle the particular litigation, it is clear that the Court viewed the statute as permitting adjustment of the $75 cap only for general inflation, not for increases in prevailing rates for legal services.

It is, of course, true, as this court recognized in *Natural Resources Defense Council v. U.S. EPA,* 703 F.2d 700 (3d Cir.1983), that one of the purposes of the EAJA is to encourage challenges to agency action and to provide a disincentive to agencies to prolong the litigation process; and that awarding higher, fully compensatory, fees would better serve these statutory purposes than lesser awards. But it is also true that, in providing the $75 per-hour cap, Congress intended to protect, to some extent, the public fisc, and that waivers of sovereign immunity are to be strictly con-

strued. Congress has decreed that the public fisc shall be vulnerable only to the extent of $75 per hour plus "cost of living" increases since 1981, and we cannot sanction fee awards in excess of that limitation in a quest for the arguable (but probably minimal) greater deterrence a higher award might provide.

█ It is a fundamental principle of statutory construction that words in a statute are to be given their ordinary meaning unless the context clearly suggests otherwise. Invoking that principle, appellant cites us to the definition of "cost of living" in the *American Heritage Dictionary of the English Language* (1973) as "the average cost of the basic necessities of life, such as food, shelter, and clothing". In support of the appellee, it is argued that there is no single accepted definition of the term, and that a more recent dictionary, *Random House Dictionary of the English Language—Unabridged* (2d ed. 1987), includes within the term "cost of living", "other necessary or usual goods and services ... considered as a standard by members of a group". Under either definition, however, it is simply impossible to equate "cost of living" with "cost of legal services". And it is inconceivable that Congress, in 1981, intended a definition of "cost of living" which would measure it by a single component which was not measured and indexed until 1986.

The interpretation espoused by the dissent—that, once an increase in the cost of living is found to permit exceeding the $75 cap, the amount of the excess need not be measured by the increase in the cost of living—overlooks the significance of the word "justifies" in the statute. In our view, "a higher fee [than the $75 per hour]" cannot be said to be "justifie[d]" by "an increase in the cost of living" unless it is measured by, or at least proportional to, and determined by reference to, the increase in "the cost of living".

The only reported appellate case squarely on point is the recent decision of the Fourth Circuit in *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir.1992), in which the court rejected the holding of the district court in our case, and held that the personal services index should not be used in increasing the $75 cap, but rather a broad-based cost of living index such as CPI–ALL. For the reasons discussed above, we agree with the Fourth Circuit on this issue. *See also, Ofray v. Secretary,* 741 F.Supp. 53 (W.D.N.Y.1990). *But see, Malick v. Heckler,* C.A. 85–4946, 1989 WL 831 *6 (E.D.Pa. Jan. 9, 1989), *Davie v. Sullivan,* No. 88–1361T, 1990 WL 274630 (W.D.N.Y., Feb. 9, 1990), and *Petition of Duggan,* 734 F.Supp. 705 (D.S.C.1990).

### III. CONCLUSION

We conclude that, in awarding fees pursuant to § 2412(d) of the EAJA, the court is required to apply the statutory cap, as affected by general inflation since 1981, and that the CPI–ALL index, rather than the personal-services component of that index, provides an appropriate measure of such inflation. The district court's use of the personal services component index in calculating the amount by which the statutory cap could be increased was an error of law. On the record before the district court, fees should have been calculated on the basis of an hourly rate not exceeding $105.91 per hour. The judgment appealed from will be vacated, and the case remanded to the district court for further proceedings consistent with the views expressed in this opinion.

BECKER, Circuit Judge, dissenting.

I cannot agree with the majority that the meaning of 28 USC § 2412(d)(2)(A)(ii) (1988) is sufficiently plain to resolve the question at issue in this case—by how much the district courts, in awarding attorney fees, may exceed the statutory cap of $75 per hour. Although I agree that the Equal Access to Justice Act (EAJA) makes clear that increases in the "cost of living" justify awarding rates above the $75 per hour rate, I do not believe that the statute plainly specifies whether market rates for legal fees or increases in the general cost of living should be the basis for determining the amount of increase. Examination of the *structure* of EAJA, however, compels

the conclusion that district courts should award fees above $75 per hour based on increases in market rates for attorneys rather than on increases in the overall cost of living. Therefore, I would hold that the district court's use of the personal services category of the CPI was appropriate and would affirm.[1]

### I.

EAJA provides in relevant part:

*The amount of fees awarded under this subsection shall be based upon prevailing market rates,* for the kind and quality of services furnished except that ... (ii) attorneys fees shall not be awarded in excess of $75 per hour *unless the court determines that an increase in the cost of living or a special factor,* such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 USC § 2412(d)(2)(A)(ii) (1988) (emphasis added).

As I read it, the statute sets up a four-tiered process for determining the amount of a fee award when the court finds such an award is appropriate. First, a district court should assume that a fee award will be based on the prevailing market rates for comparable work. Second, in the ordinary case, if that prevailing market rate exceeds $75 per hour, the court should award only $75 per hour, as the statute specifies. Third, a court may exceed the $75 per hour statutory cap if it finds 1) that there is an increase in the cost of living or 2) that a special factor justifies an increase.[2] Fourth, if the court chooses to exceed the statutory cap, the court must decide by how much it will exceed the $75 per hour rate.

As I read EAJA, the third and fourth steps of this process are distinct. That is, although an increase in the cost of living is the governing factor in deciding *whether* to increase the fee award above the $75 per hour rate (Step 3), it is not relevant to determining *the amount* that such a fee will be increased (Step 4). The statute does not say that the amount of the higher fee will be calculated based on the precise increase in the cost of living. Rather, it simply says that the court must determine "whether an increase in the cost of living ... justifies a higher fee." Once the court has made the determination that some higher fee is justified because the cost of living has increased, I see nothing in the language of the statute which even hints that the amount of the higher fee should be based on changes in the "cost of living."[3]

Nor does the legislative history of the Equal Access to Justice Act provide insight into Congress's intent as to how to measure increases above the $75 per hour rate. That history suggests a long period of legislative negotiation and compromise, but no specific indication of how to measure increases in rates when departure from the $75 per hour rate is justified. See *The Equal Access to Justice Act: Hearing Before the Subcommittee on Agency Administration of the Senate Comm. on the Judiciary,* 97th Cong, 2d Sess (1982) (Se-

---

1. I agree with the majority that the standard for review in this case is plenary. Whether the statute requires that fee departures be based on market rates or on increases on the general cost of living is a question of statutory interpretation, subject to plenary review. On the other hand, I would hold that a district court's use of a particular index or method to measure the increase in market rates for legal services is a discretionary decision, reviewable only under an abuse of discretion standard.

2. As the majority points out, there is no contention in this case that a special factor justifies an increase over the $75 per hour rate.

3. The majority suggests that because an increase in the cost of living "justifies" a higher fee, it follows that the amount a fee is increased should be directly tied to increases in the cost of living. Although that may be a perfectly sensible result, it is not plain from the text of the statute. The word "justifies" only suggests that an increase is appropriate. It does not suggest that the factor which determines whether a higher fee should be awarded is also the method by which that higher fee is calculated. As I have emphasized, the statute does not mention anywhere in (d)(2)(A)(ii) the method that courts should use to calculate fees above the $75 per hour cap. Given that the only method of calculating fees mentioned anywhere in EAJA is by market rates for legal services, I believe that the structure of EAJA compels that district courts use that method when exceeding the statutory cap.

rial No. J–97–140); *Implementation of the Equal Access to Justice Act: Oversight Hearings Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary*, 97th Cong, 2d Sess (1982) (Serial No. 71); HR Rep No. 96–1418, 96th Cong, 2d Sess, 13–14 (1980). Although Congress demonstrated its desire to encourage suits against the government, nothing demonstrates a congressional intent about the mechanical problem of how to measure increases above the $75 per hour rate.

Given the ambiguity in the plain language and the history of the statute, I would focus on the structure of the legislation in order to construe the Act. See generally, *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 2172–73, 104 L.Ed.2d 811 (1989) (relying on structure of statute to construe its meaning). Such an analysis suggests a different result from the one posited by the majority. The statute makes plain that the normal method for calculating fees is to base the fee award on market rates for legal services. To be sure, Congress, justifiably concerned about rapidly accelerating rates for attorney fees, capped fee awards at $75 per hour unless the district court determined, based on statutorily specified grounds, that an increase above that level was justified. We cannot ignore that cap. But neither should we ignore the statute's general prescription that market rates should be the basis for fee awards.

I see nothing in the statute which suggests that the practice of basing awards on market rates should evaporate once the $75 per hour cap is implicated. Instead, although the maximum "base rate" a district court can award is $75 per hour, I believe that Congress intended that courts, in departing above that rate, should start at a rate of $75 per hour and then increase the rate based on the percentage increase in the market rate for legal services. In oth-

er words, the amount of the fee award should be the amount that $75, the congressional substitute for the maximum market rate in 1981, would purchase today in the market for legal services.[4] This approach is consistent not only with that of the district court in this case but also with the approach of district courts in other cases. See, for example, *Harris v. Sullivan*, 773 F.Supp. 612, 615–16 (S.D.N.Y. 1991).

## II.

Having read the statute in this manner, I cannot accept the majority's analysis for several reasons.

Initially, I believe the majority errs by conflating the inquiry *whether* to increase the award over the $75 per hour rate with the inquiry by *how much* the award should be increased. As I have explained, I believe those steps are distinct. Although the majority relies on language in the statute (i.e., "the cost of living"), I believe that those words do not present themselves in the statute as the basis on which to measure increases above $75 per hour. More importantly, I believe that the majority's construction of the statute ignores the fundamental prescription of the statute—that fee awards should be based on prevailing market rates, even when adjusted by a statutory cap.

The majority contends that the plaintiff's interpretation of the statute would require the statute to be rewritten to read, "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in prevailing market rates ... justifies a higher fee," see Majority Opinion, at page 29. This contention is misleading. The statute bases the amount of award on prevailing market rates, but caps that award at $75 per hour. When the statute allows courts to increase awards above that cap, there is nothing in the statute which suggests what the basis for that increase would be. Therefore, no

---

**4.** District courts would have no difficulty in calculating fees under this approach, as is demonstrated by the district court's opinion in this case. The court applied the precise formula that I have described by beginning with the statutory cap of $75 per hour. The court then found that the increase in market rates for attorney fees during the relevant period was approximately 81%. The court multiplied $75 by 81%. It then added that result ($60.75) to $75 to determine the appropriate market rate per hour.

matter what interpretation we give to the statute, it is necessary that we, in effect, add words that Congress failed to insert.

Nor is the majority opinion aided by its reference to the definition of "cost of living." The majority reasons:

> Under either definition, however, it is simply impossible to equate "cost of living" with "cost of legal services." And it is inconceivable that Congress, in 1981, intended a definition of "cost of living" which would measure it by a single component which was not measured and indexed until 1986.

Majority Opinion, at page 30.

To the contrary, the use of the Personal Services Category, which includes a calculation for increases in the cost of legal services, is nothing more or less than an exercise of fidelity to the congressional use of market rates for legal services as the proper measure. The district court's observation that plaintiffs must shop in the legal market, not the supermarket, correctly apprehends that the relevant consideration is market rates for lawyers' services and not general increases in the cost of living.

Finally, I do not find the majority's reliance on *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), either helpful or persuasive. In *Pierce*, the Court defined the scope of the other consideration (aside from an increase in the cost of living) which justifies a higher fee: the "special factors" category. The Court concluded that that category does not include a mere shortage of lawyers and held that district courts should invoke "special factors" as a ground for departing from the statutory cap only in rare cases. 108 S.Ct. at 2554. In so holding, the Court was deciding *whether* a district court was justified in departing from the statutory cap. It did not address the method by which district courts should decide the amount of departure if they decide, in fact, to depart.[5] Therefore, nothing in *Pierce* should be read

as stating the Court's view on the appropriate method of calculating fee awards once a district court has found it appropriate to exceed the $75 per hour statutory cap.

### III.

In sum, I believe that the district court was correct in reading the statute as requiring fees above the statutory cap to be based on increases in the cost of legal services rather than on increases in the overall cost of living. I respectfully dissent.

---

**5.** Indeed, I believe that the majority's reliance on *Pierce* demonstrates the difficulty of the majority's approach. According to the interpretation of the statute that I have suggested, *Pierce* was a case about the third step in the process: the decision whether to exceed the statutory cap. In this case, the government has conceded that the district court was justified in exceeding the statutory cap. The present case requires us to decide the fourth step in the process: deciding by how much to exceed the statutory cap. Consequently, *Pierce* is, at best, only marginally relevant.