Dennis R. ELCYZYN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1664.

United States Court of Veterans Appeals.

Nov. 21, 1994.

172

Lorrie Gray Autry, Oklahoma City, OK, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and Paul J. Hutter, Appellate Atty., Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and MANKIN, Judges.

FARLEY, Judge:

This case is before the Court on the appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Court will grant the appellant's application and order the award of attorney fees and expenses consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Substantive Appeal

The appellant filed a timely appeal of a July 30, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which had granted an effective date of December 31, 1986, for service connection for post-traumatic stress disorder (PTSD) and which denied permanency of a total compensation rating for PTSD. The appellant argued that the Board had committed clear and unmistakable error (CUE) in earlier decisions which had resulted in the denial of an earlier effective date for service connection for PTSD. In addition, the appellant alleged that the Board had erred in denying him a permanent total disability rating for PTSD.

In an August 18, 1993, memorandum decision, this Court vacated the BVA decision and remanded the matter for two reasons. *Elcyzyn v. Brown*, U.S.Vet.App. No. 91–1664, 1993 WL 321766 (Aug. 18, 1993, as amended Aug. 30, 1993) (hereinafter mem. decision). First, the Court found that the appellant had properly raised before the BVA a CUE claim which the BVA had failed to adjudicate. Second, the Court found that the BVA had rejected the appellant's claim to permanency of his service-connected PTSD rating based on its own unsubstantiated medical conclusions without providing any independent medical basis for its conclusions, and without providing any reasons or bases for rejecting the medical evidence supporting the appellant's claim. Such action was held to be inconsistent with this Court's decisions in *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53

(1990); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); and *Colvin v. Derwinski*, 1 Vet. App. 171, 175 (1991). The Court did not retain jurisdiction.

### B. The Application for Attorney's Fees

On June 1, 1994, the appellant filed an Application and Brief for Payment of Attorney's Fees Pursuant to EAJA; on July 5, 1994, the Secretary of Veterans Affairs (Secretary) filed a Response (Response); and on July 11, 1994, the appellant filed a Reply brief (Reply). In his application, the appellant argues that he is a prevailing party, that the position of the Secretary was not substantially justified, that the appellant is an eligible party under the statute, and that $4,416.03 represents a reasonable award of fees and expenses. Brief (Br.) at 2–3, 5–6. Attorney fees of $4,328.57 (43 hours and 35 minutes at a rate of $100 per hour) and computer research expenses of $87.46 were requested; the total claim is $4,416.03. Br. at 6.

The Secretary argues that his position was substantially justified and that fees and expenses should not be awarded. Alternatively, the Secretary asserts that, if fees are awarded, the 43 hours expended were unreasonably high, the hourly rate should be reduced to the statutory cap of $75 per hour, and Westlaw charges, included among expenses, should not be allowed. Response at 28. The Secretary does not contest the appellant's representations concerning his net worth for purposes of 28 U.S.C. § 2412(d)(2)(G), and the appellant's status as a "prevailing party" under 28 U.S.C. § 2412(d)(1)(A). Further, the Secretary does not contend that "special circumstances" as defined by 28 U.S.C. § 2412(d)(1)(A) would make an attorney fees award unjust in this case. Response at 8.

## II. THE EQUAL ACCESS TO JUSTICE ACT

On October 29, 1992, Congress enacted section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992) (found at 28 U.S.C. § 2412 note). Section 506(a) amended 28 U.S.C. § 2412(d)(2)(F) to make the EAJA applicable to this Court.

The EAJA provisions pertinent to the issues presented in this appeal are:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection.... The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

. . . .

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an in-

crease in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

. . . .

(D) "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; ...

. . . .

(F) "court" includes the United States Court of Federal Claims and the United States Court of Veterans Appeal;

28 U.S.C. § 2412(d)(1)(A), (B), (2)(A), (D), (F).

## III. QUALIFYING FOR EAJA FEES

### A. Predicate Issues

■ There are three predicate findings to an award of EAJA fees and expenses: (1) the party opposing the United States must be a "prevailing party"; (2) the government's position must not have been substantially justified; and (3) there must be no circumstances that make an award against the government unjust. In this case, the Secretary does not contest the appellant's status as a "prevailing party," and we find that the appellant in fact and in law is a "prevailing party" under 28 U.S.C. § 2412(d)(1)(A). See *Stillwell v. Brown*, 6 Vet.App. 291, 300–01 (1994). The Secretary also does not assert "special circumstances" as defined by 28 U.S.C. § 2412(d)(1)(A) which would make an attorney fees award unjust in this case. Response at 8. Thus, the only predicate issue in dispute is whether the Secretary's position was substantially justified.

### B. Was the Position of the United States "Substantially Justified"?

In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court held that in order for the position of the United States to be "substantially justified" it must have a "reasonable basis both in law and fact." *Id.* at 565, 108 S.Ct. at 2550 (citations omitted). "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the

most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 note 2, 108 S.Ct. at 2550 note 2. Subsequently, in *Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the Supreme Court concluded that "position" encompassed both the agency's prelitigation conduct and subsequent litigation positions, but that only one determination of lack of substantial justification with respect to the entire matter need be made. *Id.* at 159, 110 S.Ct. at 2319. "The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility." *Id.* at 160, 110 S.Ct. at 2319.

In *Stillwell,* 6 Vet.App. at 302, this Court reviewed all of the pertinent decisions on the issue of "substantial justification" and established the following standard:

> ... the VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court. [Citations omitted].

We also adopted the Federal Circuit's "reasonableness" test which the *Stillwell* Court summarized as follows:

> (1) [R]easonableness is determined by the totality of circumstances, and not by any single-factor approach;
> (2) reasonableness "turns on what support in law and fact the government offered in defending its case, and ... the merits of the agency decision constitute only one factor in evaluating the justification for the government's litigating position in court," *Essex [Electro Engineers, Inc. v. United States,* 757 F.2d 247, 253 (Fed.Cir.1985) ] (citation omitted); (3) whether the government "drag[ged] its feet," or "cooperated in speedily resolving the litigation," *id.;* and (4) whether the government "departed

from established policy in such a way as to single out a particular private party," *id.* at 254 (citation omitted).

*Stillwell* at 302.

### 1. Position of the Parties

The Secretary argues that his positions on the merits were reasonable both in fact and in law as established at the time of the adjudication because the BVA relied on the then-current statutory and regulatory provisions regarding both the earlier effective date and the permanency issues. Further, when the BVA issued its decision in July 1991, there was no substantive case law concerning CUE, and the statutory and regulatory guidance concerning the effective dates of veterans' claims was clear, as was the regulatory guidance concerning the permanent nature of disabilities. Response at 9.

The appellant argues that, because the BVA failed to develop and adjudicate the appellant's claim of CUE in 1983, the Secretary's position did not possess a reasonable basis in both fact and law and thus was not substantially justified. Br. at 4. Next, the appellant argues that in rejecting his entitlement to a permanent total evaluation for his service-connected PTSD on the basis of its own unsubstantiated medical conclusions without providing any independent medical basis, the Board failed to follow the correct legal standards and this Court's controlling precedents. Thus, the appellant concludes, the Secretary's attempt to justify this unjustifiable position before this Court was not substantially justified. Br. at 4.

### 2. The Position of the United States on the Issue of "Clear and Unmistakable Error" was Substantially Justified

■ In the case on the merits, the Secretary had argued against the appellant's CUE allegations by stating that

> [i]t is notable that the BVA reconsideration decision of July 1985 addressed allegations of error (that the record was not complete) in BVA's July 1984 decision. Appellant now seeks to walk once more the same trail. "[A]n appellant is not entitled to raise again a 'particular claim' of 'clear and unmistakable error' once there has been a

final decision denying that claim." [Citing *Russell v. Principi,* 3 Vet.App. 310, 319 (1992) ]. Allegations of error in BVA's July 1985 reconsideration decision, are a means to revisit BVA's July 1984 decision. Only allegations of error in the July 1985 reconsideration decision should, if at all, be addressed now by this Court (and only if jurisdictionally appropriate).

Secretary's Brief at 11. In the Secretary's view, "BVA's refusal to revisit its 1984 and 1985 decisions did not constitute error." *Id.* at 12.

This Court reached a contrary conclusion. After holding that "as a matter of law that appellant [had] submitted a well grounded claim for an earlier effective date for his service-connected PTSD based on CUE in the 1984 and 1985 BVA decisions" (mem. decision at 4), the Court found that the BVA had failed to adjudicate the claim and remanded the CUE "claim to the BVA for appropriate development and readjudication." *Id.* at 5.

Subsequently, however, in *Smith v. Brown,* 35 F.3d 1516 (1994), the Federal Circuit held that "the Secretary correctly interpreted the CUE review authority in [38 C.F.R.] § 3.105(a) as relating only to review of AOJ [Agency of Original Jurisdiction] adjudicatory decisions and *not to those of the Board."* *Smith,* 35 F.3d at 1527 (emphasis added). Therefore, the Secretary's position on the merits in the underlying matter, i.e., that the BVA did not err in failing to consider the appellant's claims of CUE in its 1984 and 1985 decisions, must now be seen as reasonable because BVA decisions are not subject to claims of CUE under 38 C.F.R. § 3.105(a). Further, the appellant does not allege in the application for EAJA fees any other basis for attack upon the Secretary's position in *Elcyzyn.* Specifically, the appellant does not allege that the Secretary "dragged (his) feet" or that the Secretary departed from established policy in this case in such a way as to single out the appellant regarding this CUE claim. In reviewing all factors, this Court finds the Secretary's position on the CUE issue to be substantially justified. *See Stillwell, supra.*

### 3. The Position of the United States on the Permanency Issue was not Substantially Justified

■ The Secretary's position on the issue of a permanent total rating for the appellant's service-connected PTSD lacks substantial justification. As this Court held in its decision on the merits:

> Contrary to this Court's decisions in *Gilbert* and *Colvin,* the BVA rejected appellant's entitlement to a permanent total evaluation for his service-connected PTSD based on its own unsubstantiated medical conclusions without providing any independent medical basis for its conclusions and without providing any reasons or bases for rejecting the medical evidence supporting appellant's claim. [Citing *Gilbert,* 1 Vet. App. at 59; *Colvin,* 1 Vet.App. at 175.]

Mem. decision at 7.

*Gilbert* was decided October 12, 1990 (as amended on December 18, 1991); *Colvin* was decided on March 8, 1991. The BVA decision appealed to this Court was issued on July 30, 1991, and the Secretary's brief to this Court was filed on April 1, 1993; both dates were subsequent to *Gilbert* and *Colvin,* the latter by more than two years. Neither the BVA decision nor the Secretary's brief took note of the relevant statutory provisions as interpreted by precedential decisions of this Court. In issuing the post-*Gilbert* and *Colvin* BVA decisions and in failing to correct the Board's error or to bring that error to the attention of this Court, the Secretary acted unreasonably. Therefore, the Secretary's position on the permanency issue lacks substantial justification and "operates as a one-time threshold for fee eligibility." *Jean,* 496 U.S. at 160, 110 S.Ct. at 2320.

### IV. CALCULATION OF ALLOWABLE FEES

■ We turn now to the calculation of the amount of fees to which the appellant is entitled under the EAJA. As the Supreme Court has noted, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939,

76 L.Ed.2d 40 (1983). That simple mathematical exercise, however, is only the beginning.

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the ... court to adjust the fee upward or downward, including the important factor of the "results obtained". This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434, 103 S.Ct. at 1940. Therefore, this Court will follow the guidance of the Supreme Court and analyze, first, the number of hours reasonably spent; second, the applicable hourly rate; and, third, the "other considerations" which may or may not justify an adjustment. Finally, we will consider the request for computer research expenses.

### A. Reasonable Hours

#### 1. *Hours Claimed by the Appellant*

■ The appellant has submitted a request for compensation for 43 hours and 35 minutes of attorney time. In support of that request, the appellant filed an accounting which provides a contemporaneous record of the exact time spent on the case, including a description of the services performed, the usual billing rates, and a breakdown of expenses, as required by EAJA. See 28 U.S.C. § 2412(d)(1)(B) (requiring an "itemized statement ... stating the actual time expended and the rate at which fees and other expenses are computed."). *See also Community Heating & Plumbing v. Garrett,* 2 F.3d 1143, 1146 (Fed.Cir.1993) and cases cited therein. The Secretary's opposition to the overall fee award is token and perfunctory at best. Neither the Secretary nor the record provides any basis for the Court to conclude that 43 hours is unreasonable.

#### 2. *Apportionment of Hours*

The appellant has prevailed on two distinct claims, but the position of the United States as to one, the CUE claim, was substantially justified. In *Devine v. Sutermeister,* 733 F.2d 892, 897 note 4 (Fed.Cir.1984), the Federal Circuit followed the guidance of the Supreme Court in *Hensley* and "disallowed" fees for services performed in connection with claims in which the position of the United States was substantially justified. *See also Cinciarelli v. Reagan,* 729 F.2d 801, 809 (D.C.Cir.1984) (declined to award fees for "combatting" a government defense which was "substantially justified" but awarded fees for "combatting" a second defense which was not.) In the circumstances presented by this appeal, we conclude, therefore, that it would not be appropriate for fees to be awarded for the time spent on the CUE claim because the position of the United States on that claim was substantially justified. *See Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1939–41; *see also Community Heating & Plumbing,* 2 F.3d at 1146.

■ A court has considerable "discretion" and "flexibility" in determining "the amount of a fee award." *See Jean,* 496 U.S. at 161, 110 S.Ct. at 2320; *Chiu v. United States,* 948 F.2d 711, 713 (Fed.Cir.1991). Depending upon the circumstances and the record, in some instances a court may find it necessary to order an appellant to file an amended application which allocates only that time expended on issues where the position of the United States was not substantially justified. In other cases, the record may be sufficiently precise or detailed to serve as the basis for the exercise of informed discretion. This appeal falls into the latter category.

■ Of the time claimed by the appellant, 28 hours and 35 minutes were spent in general case management tasks such as review of records, client interview time, and general case documentation preparation. All of the general case management is inextricably linked to the preparation of the entire case and there is no basis for an equitable apportionment. The appellant has also claimed that 15 hours were required to research, draft, and assemble the appellant's

amended brief. (Since the appellant did not claim any time related to the original brief filed on December 26, 1991, the Court presumes that any such time is included in the 15 hours.) Of the 15 hours claimed for the brief, the Court concludes that a third of the time should be "excluded" (*Cooper v. U.S.R.R. Retirement Bd.*, 24 F.3d 1414 (D.C.Cir.1994)) and "disallowed" (*Devine, supra*) as time spent on the CUE claim where the position of the United States was substantially justified. The remaining two-thirds of the time spent on the brief, i.e., researching and writing general issues, such as jurisdictional, statutory, and regulatory analysis, as well as time spent on the PTSD claim, will be awarded. Therefore, we award the entire 28 hours and 35 minutes of general case management time and 10 hours for brief preparation time for a total of 38 hours and 35 minutes.

### B. Reasonable Rate

The appropriate rate for "fees or other expenses" under EAJA, 28 U.S.C. § 2412(d)(1)(A), is defined in subsection 2412(d)(2), as follows:

> (2) for the purposes of this subsection—
> (A) "fees and other expenses" includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

28 U.S.C. § 2412(d)(2)(A).

The appellant has asked the Court to exceed the statutory cap of $75 and award a fee of $100 per hour, an amount which, in the appellant's view, would compensate for the increase in the cost of living since the EAJA was enacted in 1981. Such an increase would also take into account the prevailing market rate for EAJA fees in Oklahoma (the geographic area for the appellant's attorney) which the appellant states has gone as high as $150 per hour. As authority for the latter

proposition, the appellant cites to three unpublished Oklahoma cases and states that in one of the cited cases, an EAJA fee of $100 per hour was awarded. The appellant further reports that the firm's attorneys have been awarded fees at the rate of $113 per hour representing $100 plus a $13.50 (sic) increase for cost of living augmentation. Reply at 3. Finally, the appellant argues that a special factor, the limited availability of qualified attorneys who are licensed to practice before this Court, justifies the higher fee. *Id.*

In the view of the Secretary, the appellant's requested hourly rate is excessive. He argues that the $75 hourly rate is a statutory ceiling, and unless a court finds that a cost of living increase or a "special factor" justifies an enhancement, a court may not award an hourly rate in excess of the statutory cap, (citing *Pierce, supra*). Response at 21. The Secretary also urges the Court to adopt, as a matter of policy, a fixed rate of $75 per hour for EAJA fees and refers to the Administrative Conference of the United States proposed Recommendation 92-5 entitled *Streamlining Attorney's Fee Litigation Under the Equal Access to Justice Act*, for the proposition that such a set fee would be consistent with the policy of simplifying the EAJA claims process. Finally, the Secretary argues that veterans law does not constitute a specialized skill as contemplated by the Supreme Court, citing to *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2553. Response at 21–23.

■ With respect to the policy argument, much as the Court might like to follow the Secretary's recommendation and simplify the EAJA process by adopting a single flat hourly rate, the empirical fact that virtually every appellate court in the land has refrained from doing so counsels strongly against accepting the Secretary's suggestion. In any event, the responsibility for such policy determination lies more properly with Congress, not this Court.

#### 1. The Prevailing Rate

■ The appellant's hourly rate analysis is at once too much and too little. It is not enough merely to propose an hourly rate and

then throw numerous factors and conditions against the wall in the hope that at least some will stick and justify the requested rate. The EAJA, as amplified over more than a decade by numerous judicial decisions, requires that the proper rate be calculated with some degree of reasoned precision. If for no other reason, such precision is necessary to facilitate appellate review under the governing "abuse of discretion" standard. *See Pierce,* 487 U.S. at 557–63, 108 S.Ct. at 2545–49; *Chiu, supra.*

In fixing the appropriate hourly rate under the EAJA, the starting point must necessarily be determining the prevailing market rate. In this case the appellant has asserted that the prevailing market rate is more than $75 per hour and ranges between $100 to $150 per hour. Reply at 3. The Secretary does not dispute the appellant's assertion as to the prevailing market rate claimed and there is no basis upon which the Court could do so. In *Levernier Constr., Inc. v. United States,* 947 F.2d 497 (Fed.Cir.1991), the Federal Circuit held that "the EAJA authorizes the award of the lower of either the prevailing market rate or $75 per hour plus a COLA or other enhancement." *Id.* at 504. As compelled by statute and *Levernier,* therefore, the appellant will be awarded the lower of the prevailing rate or the statutory $75 plus any applicable enhancements.

### 2. Cost of Living Adjustment

*a. A cost of living increase may justify a higher fee.* "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The United States Court of Appeals for the Federal Circuit has made such a determination: "Clearly, the court may adjust the statutory cap governing the rate of attorneys fees upward to account for an increase in the cost of living." *Levernier Constr., Inc.,* 947 F.2d at 503; *see also Oliveira v. United States,* 827 F.2d 735, 742 (Fed.Cir.1987) ("The Claims Court ... had discretion to adjust upward the statutory hourly rate for attorney fee awards pursuant to the EAJA"); *Phillips v. General Services Admin.,* 924 F.2d 1577, 1583 (Fed.Cir.1991) (awarded attorney fees under EAJA at the

$75 per hour rate increased by a cost of living adjustment); *Chiu,* 948 F.2d at 718–19. Additionally, the geographical circuit courts of appeal have similarly determined that a fee higher than $75 is justified by the increase in the cost of living. *See Harris v. Railroad Retirement Bd.,* 990 F.2d 519, 521 (10th Cir.1993), and the cases cited therein.

In keeping with this consistent jurisprudence, we hold that the increase in the cost of living since enactment of the EAJA in 1981 may justify a fee higher than the statutorily-capped $75. If an EAJA applicant provides proof of an increase in the cost of living sufficient to justify an enhanced hourly rate, and factors such an increase into the "itemized statement ... stating ... the rate at which fees ... were computed" (28 U.S.C. § 2412(d)(1)(B)), such a rate will be awarded. *See Johnson v. Sullivan,* 919 F.2d 503, 505 (8th Cir.1990), and cases cited therein. It must be noted, however, that the prevailing market rate must be used if that rate is less than the $75 plus a cost of living adjustment. *See Levernier Constr., Inc.,* 947 F.2d at 504.

*b. The cost of living will be determined by reference to the CPI–ALL index.* We turn now to the question of the index to be used in determining the applicable increase in the cost of living. Although the Federal Circuit has yet to be called upon to adopt a definitive position, the majority view of the geographical courts of appeal is that the appropriate cost of living index is the United States Department of Labor's Consumer Price Index for All Urban Consumers (CPI–U or CPI–ALL) published by the Bureau of Labor Statistics. *See, e.g., Harris v. Sullivan,* 968 F.2d 263 (2d Cir.1992); *Dewalt v. Sullivan,* 963 F.2d 27 (3rd Cir.1992); *Sullivan v. Sullivan,* 958 F.2d 574 (4th Cir. 1992); *Baker v. Bowen,* 839 F.2d 1075 (5th Cir.1988); *Bode v. United States,* 919 F.2d 1044 (5th Cir.1990); *Johnson, supra; Jones v. Espy,* 10 F.3d 690 (9th Cir.1993).

In *Dewalt, supra,* Senior District Judge Fullam, sitting by designation, provided a succinct history and discussion of the CPI–ALL index which merits inclusion here.

Beginning in the World War I era, the Bureau of Labor Statistics has published a

series of indexes of consumer prices based upon its collection of data through various sampling techniques. Regular publication of a national index began in 1921, under the general title "Cost of Living". In 1940, the name was changed to "Indexes of the Cost of Living of Wage–Earners and Lower–Salaried Workers in Large Cities", and in 1945, the name was changed to "Consumer Price Index Moderate Income Families in Large Cities". *See B.L.S. Handbook of Methods,* at p. 185. In 1978, the coverage was broadened to include all urban consumers, not just wage-earners. This CPI–U, or CPI–ALL as it is commonly referred to, takes into account the buying patterns of professional and salaried workers, part-time workers, the self-employed, the unemployed, and retired persons, as well as wage-earners and clerical workers, and reflects the purchasing habits of approximately 80% of the non-institutionalized population of the United States. *See The Consumer Price Index: 1987 Revision,* p. 1; *B.L.S. Handbook of Methods,* p. 154. At some risk of over-simplification, it can be stated that the CPI–ALL incorporates data covering several hundred categories of items, separated into 69 expenditure classes in 7 general categories of expenses: food and beverages, housing, apparel and upkeep; transportation, medical care, entertainment, and other goods and services.

Beginning in 1986, the "other goods and services" category was further refined to include a separate sub-category for personal services, including legal services. The all-items CPI indexes separately record price levels on a national basis, on regional bases, and for 29 local areas. But the legal services component is calculated only on a national basis.

*Id.* at 28.

Circuit Judge Becker dissented in *Dewalt* and, agreeing with the district court, would have held that the appropriate index for determining the amount of EAJA fees is the personal services component of the CPI which includes legal services. *See Dewalt,* 963 F.2d at 30–33 (Becker, J. dissenting.) Use of the CPI personal services sub-compo-

nent would mean that any increase over the statutory cap would be primarily due to an increase in the prevailing market rate for such services and not based on the more general "cost of living" reflected in the CPI–ALL index.

In rejecting this view, the majority agreed with the Fourth Circuit decision in *Sullivan, supra,* which had observed:

Attorney fee awards are capped at $75 per hour under the terms of section 2412(d)(2)(A), "unless the court determines that an increase in the *cost of living* ... justifies a higher fee." Congress neither defined "cost of living" nor specified an index or other data to be used in calculating increases in the cost of living. "Cost of living," however, is a term with a commonly understood meaning. As commonly understood, the term means the costs of food, shelter, clothing, and other basic goods and services needed in everyday life. It is highly unlikely that Congress would have chosen this commonly used term, which is widely understood to be a composite of almost exclusively nonlegal costs, [citation omitted], had it intended to authorize adjustments to reflect increases in legal service costs in particular; if this had been its intent, it would have simply stated the $75 cap applies "unless the court determines that an increase in the *cost of legal services* ... justifies a higher fee." ...

The structure of section 2412(d)(2)(A) confirms that Congress intended for the term "cost of living" to assume its ordinary meaning. If an adjustment for increases in the cost of legal services were allowed, the exception for legal services to the general rule that fee awards should reflect "prevailing market rates" would be meaningless; attorney fees, like all other fees, would be awarded at the prevailing market rates.

*Sullivan,* 958 F.2d at 576–77. The *Dewalt* majority also followed the Supreme Court's "admonition" in *Pierce:*

We do not think Congress meant that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour (adjusted for inflation), then that market minimum rate will

govern instead of the statutory cap. To the contrary, ... Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be.

*Dewalt,* 963 F.2d at 29 (quoting *Pierce,* 487 U.S. at 572, 108 S.Ct. at 2553).

We find the view of the *Dewalt* majority and *Sullivan* to be persuasive and we hold that the appropriate cost of living index in determining whether a higher attorney fee under the EAJA is justified is the national CPI–ALL index or the CPI–ALL index for the region or local area where the services were performed.

■ *c. Application of the index to the services performed.* The Federal Circuit has determined that an increase in the cost of living must be measured from the effective date of the passage of the EAJA to the date on which the legal services were performed. *See Phillips,* 924 F.2d at 1583. The former date is a matter of public record: October 1, 1981. *See also Chiu,* 948 F.2d at 718–19 ("While the government once advanced the date of reenactment of the EAJA in 1985 as the base date in case after case, it now appears to have accepted that the original date of enactment of the statute, October 1, 1981, is the appropriate starting date.... The Claims Court correctly used that date.") The latter date, "the date on which legal services were performed," warrants a bit more discussion. *Phillips, supra.*

Literal fidelity to the statute and case law would require an applicant to present a separate increase-in-the-cost-of-living determination for each date on which services were performed. Such a venture, while permissible, would hardly be an efficient expenditure of legal—or judicial—resources. In *Chiu,* the Federal Circuit overturned an award of EAJA fees where the increase in the cost of living was calculated as of the date of the court's decision. The Circuit accepted the argument of the Government that the use of the decision date, which was obviously after the performance of an attorney's services, "contravenes the no-interest rule reaffirmed by the Supreme Court in *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 [parallel citations omitted] (1986)." *Chiu,* 948 F.2d at 719. The Court held that "[t]he EAJA does not authorize increases to the hourly rate in the nature of interest payments." *Id.*

However, in striking the award calculated on the basis of a post-performance date, the Federal Circuit took care not to discourage the use of a single date during the period services were being performed to facilitate a single—and simple—calculation. *See Chiu,* 948 F.2d at 722 note 10 ("By holding that a post-performance COLA may not be awarded, we do not mean to preclude the court from adopting, in an appropriate case, a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point.").

Based upon this Court's five years of experience, and in keeping with the Federal Circuit's guidance in *Chiu,* the Court will permit—and encourage—the selection of a single mid-point date, such as the date upon which an appellant's principal brief, motion, or petition is filed with the Court, as the base for calculating a cost of living increase. Such a date is a matter of public record and easily ascertainable by all parties and the Court from the docket sheet. It is also the date before which most of the legal services will have been performed and therefore its use would not run afoul of *Chiu* or *Shaw* because there would not be payment for prior performance of services at post-performance rates. For example, in this appeal, a permissible cost of living increase would be one measured from October 1, 1981, the date of enactment of the EAJA, to March 13, 1992, the date the appellant's amended brief was filed. The percentage increase would be calculated by subtracting the index on October 1, 1981, from that on the latter date and dividing the difference by the index on October 1, 1981.

### C. Other Considerations

■ Under the EAJA, the hourly rate also may be enhanced if the Court determines that "a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The appellant has claimed as special factors "the hours

expended, and the matter of the difficulty of the case, the prior unsuccessfulness of the plaintiff, the expertise of the attorney, and the limited number of attorneys in Oklahoma that practice law in this area." Br. at 6. The appellant's reply again references "the limited availability of qualified attorneys for bringing the suit in the Court [of] Veterans Appeals. In the State of Oklahoma, there is a limited availability of qualified attorneys and attorneys who are licensed to practice before COVA for the proceedings involved, which justifies a higher fee than the $75.00 per hour . . . ." Reply at 3–4.

The Supreme Court in *Pierce*, 487 U.S. at 571–73, 108 S.Ct. at 2553–54, provides guidance for analyzing the "special factors" element of an EAJA award: "the 'special factors' envisioned by the exception must be such as are not of broad and general application." *Id.* at 573, 108 S.Ct. at 2554. The Court then rejected the factors which had been used by the district court:

> The "novelty and difficulty of issues," "the undesirability of the case," the "work and ability of counsel," and "the results obtained" . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are. The factor of "customary fees and awards in other cases," . . . is even worse; . . . It was an abuse of discretion for the District Court to rely on these factors.

*Ibid.*

The issue of "the limited availability of qualified attorneys for the proceedings involved" warrants separate analysis, and we look again to *Pierce:*

> If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap-since the "prevailing market rates for the kind and quality of the services furnished" are obviously *determined* by the relative supply of that kind and quality of services. . . . [T]he exception for "limited availability of qualified attorneys" . . . must refer to attorneys "qualified for the proceedings" in some special

sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Id.* at 571–72, 108 S.Ct. at 2553–54.

Given this analysis, the issue becomes whether this Court believes that the practice of veteran's law is a specialty which requires "distinctive knowledge or specialized skill needful for the litigation in question." We do not. The practice before this Court is analogous to the practice of administrative law before any federal appellate court. The representation of a veteran before this Court requires the "general lawyerly knowledge and ability useful in all litigation," *Pierce, supra,* rather than "an identifiable practice specialty . . . or [special] knowledge [such as] of foreign law or language." *Id.* at 572, 108 S.Ct. at 2554. Therefore, in keeping with *Pierce*, we reject the appellant's arguments for an enhanced fee award based on "special factors" or the "limited availability of qualified attorneys for the proceeding," and do not enhance the $75 hourly EAJA attorney fee award on that basis.

## V. AWARD OF COMPUTER RESEARCH EXPENSES UNDER EAJA

■ The appellant also seeks an award of computer research expenses in the amount of $87.46. The appellant states that computer research costs were necessarily incurred to prepare the amended brief filed with this Court in this case, and should thus "be considered fees incurred by the petition[er] in his civil action under the EAJA." Reply at 5. The Secretary, relying upon *Kimball v. Shalala*, 826 F.Supp. 573 (D.Me.1993), argues that computer research costs should be disallowed because such costs are overhead costs

which should be borne by the appellant. Response at 27.

The EAJA authorizes the award of "fees and other expenses." 28 U.S.C. § 2412(d)(1)(A). The phrase "Fees and other expenses" include

> the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case....

28 U.S.C. 2412(d)(2)(A).

The Federal Circuit has spoken in response to an argument similar to the one the Secretary advances here. In *Oliveira*, 827 F.2d at 743, the Court responded to a Claims Court interpretation of the "Fees and expenses" issue by noting:

> The Claims Court, characterizing these expenses as those ordinarily arising in the course of providing legal services, concluded that the pertinent statutory language of the EAJA and the case law interpretations of the statutory language did not provide recovery for such expenses. This interpretation of the EAJA is plainly wrong.

*Ibid.*

The Federal Circuit rejected the Claims Court's analysis, stating:

> [T]he trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried.... In contrast, expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court, or which expenses the court finds to be unreasonable or unnecessary in the pending litigation, cannot be awarded under the EAJA.

*Id.* at 744.

Therefore, consistent with the guidance provided by the Federal Circuit, we reject the Secretary's argument. Indeed, an award of computer research expenses by this Court is particularly appropriate because our new jurisprudence continues to develop and hard-bound volumes containing our decisions are not readily available throughout the United States. The Court finds that the appellant incurred computer research costs in preparation for the proceedings before this Court, and that such costs are customarily charged to the client where these proceedings took place.

The remaining issue is whether the cost claimed was "reasonable." The appellant has claimed these expenses:

| $ | .34 | connect time charge |
|---|---|---|
| | 40.00 | 10 minutes usage fee at $4.00/min |
| | 18.18 | Offline printing at .02/line for 909 lines for Willis v. Derwinski (U.S.Vet.App. No. 89–167 1991) and Collier v. Derwinski (U.S.Vet.App. No. 90–839 1991) [sic] (Research for Brief in Chief) |

$ 58.52

| | .34 | Connect time charge |
|---|---|---|
| | 20.00 | 5 min. usage at $4.00/min |
| | 8.60 | Offline printing at .02/line for 430 lines (Chisem Vet.App. No. 90–1590 (1993) [sic] Research on Stay of Proceedings |

$ 28.94

$ 87.46 TOTAL RESEARCH

Time sheet appended to Brief at 6.

 To determine the reasonable and necessary computer research expenses the appellant incurred, we look to the issues addressed in the research to determine whether there is a basis for apportioning the costs to the CUE issue, where the position of the United States was substantially justified, and the permanency issue, where it was not. In this case, however, we note that none of the research, to include specific cases referenced in the accounting, *Chisem v. Brown*, 4 Vet.App. 169 (1993), *Willis v. Derwinski*, 1 Vet.App. 66 (1991), and *Collier v. Derwinski*, 1 Vet.App. 413 (1991), can clearly be limited to the CUE issue. Nor has the Secretary provided any grounds for such an apportionment. Therefore, we find that the computer research time cannot be equitably apportioned based on issues involved in the case, and we conclude that the entire time of 15 minutes and the entire cost for offline printing 1339 lines is reasonable.

184

## VI. CONCLUSION AND ORDER

The appellant's Application For Payment of Attorney's Fees Pursuant to EAJA is granted in an amount to be determined in accordance with this opinion. Fees are awarded for 38 hours and 35 minutes, plus an award for the computer research expense for the full cost incurred of $87.46. Although the appellant has asked that the hourly rate be enhanced because of an increase in the cost of living, it is not, and will not be, the responsibility of this Court to divine or discover the appropriate cost-of-living figures. Rather, the burden is on the applicant to claim that an increase in the cost of living justifies a higher rate and to present evidentiary support for that claim. *See Community Heating & Plumbing,* 2 F.3d at 1146; *McNulty v. Sullivan,* 886 F.2d 1074 (8th Cir.1989); *Wonders v. Shalala,* 822 F.Supp. 1345 (E.D.Wis.1993). *Cf. Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). It will be Secretary's task to raise pertinent and documented objections if he finds fault with an appellant's submission.

The appellant here sought an increase in the statutorily-capped prevailing rate of $75 based upon a claim of an increase in the cost of living but did not submit the requisite accounting and calculations. However, this is a case of first impression, and the appellant's failure to shoulder this burden no doubt was due, at least in part, to the absence of guidance from this Court. For this reason, the appellant will be afforded an opportunity to submit an accounting consistent with our holdings today.

If the appellant wishes to seek an enhancement of the hourly rate due to an increase in the cost of living, he may within 30 days file with this Court and serve upon the Secretary a revised accounting which contains the requisite basis for determining that a higher hourly fee is justified by a cost of living increase, such increase to be measured by reference to the CPI–ALL index. If the appellant does not file a revised accounting within 30 days, the Clerk of the Court will enter an Order awarding expenses of $87.46 and attorney fees for 38 hours and 35 minutes at a rate of $75.00.

If the appellant files and serves a revised accounting, the Secretary shall have 20 days to file objections to that accounting; if objections are not filed within 20 days, or if the Secretary indicates that he will interpose no objections, the Clerk of the Court is directed to enter an order awarding the appellant's claimed attorney fees and expenses. If the Secretary files objections, the parties will be expected to attempt to resolve any differences and a conference pursuant to Rule 33 of this Court's Rules of Practice and Procedure would be available to assist the parties in that endeavor.

It is so ORDERED.