Anthony PERRY, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 94–962.

United States Court of Veterans Appeals.

July 16, 1998.

Gary L. Beaver and Craig M. Kabatchnick, Greensboro, NC, were on the pleadings for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Vito A. Clementi, Washington, DC, were on the pleadings for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam-era veteran Anthony Perry, appealed through counsel a July 1, 1994, decision of the Board of Veterans' Appeals (Board or BVA) denying service connection for a heart disorder. That decision was vacated and the matter was remanded by the Court on February 22, 1996. *Perry v. Brown*, 9 Vet.App. 2 (1996). The appellant then filed an application for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). As a result of subsequent responses and motions—including a November 6, 1997, motion that the Court issue an order requiring the Secretary to show cause why he should not be held in contempt for failing to comply with the Court's remand order—the appellant has supplemented that application five times. The EAJA application and its supplements and related motions are the subject of this opinion. For the reasons that follow, the Court will grant the application in part and deny it in part.

## I. Background

The extensive procedural history of this case bears directly upon the Court's review of the EAJA application, and so the Court will review it in detail. This case was originally before the Court on appeal of a July 1, 1994, Board decision denying service connection for a heart disorder. The appellant, then pro se, filed a Notice of Appeal on October 24, 1994; subsequently, and prior to the filing of the record on appeal (ROA), attorney Shomari Jahi entered an appearance for the appellant as pro bono counsel under the auspices of the Veterans Consortium Pro Bono Program (Program). The ROA was then filed, but before the appellant's brief was filed attorney Jahi filed, in May 1995, a motion to withdraw from the case. The Court granted that motion on May 26, 1995, and, on motion of the appellant, stayed the case for 30 days pending entry of another attorney.

On June 15, 1995, the Secretary filed a motion to lift the stay, vacate the BVA decision on appeal, and remand the case on the basis of *Austin v. Brown,* 6 Vet.App. 547 (1994). The Secretary noted that the Board decision on appeal had relied on the opinion of a Board medical advisor and that "there is no indication of record that Appellant was informed of his right to present additional evidence" in compliance with *Austin.* Motion at 2. The Secretary concluded:

> In light of this Court's recent decision in *Austin* ..., which post-dated the Board's decision, a remand is required in this case in order to allow Appellant an opportunity to submit additional evidence in response to the Board's reliance on the opinion from the Board medical advisor. *See Karnas v. Derwinski,* 1 Vet.App. 308, 312–313 (1991).

> On remand, Appellant should be permitted to submit additional evidence and argument regarding this case in accordance with the Court's holding in *Austin* ..., and *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

Motion at 2.

On June 16, 1995, attorney Craig Kabatchnick entered an appearance for the appellant as pro bono counsel under the auspices of the Program. The appellant and the Secretary were unable to agree on a proposed joint motion for remand, and, on September 21, 1995, the appellant filed a motion to remand in which he argued that the Secretary's proposed remand, "based **solely** on *Austin,* would be entirely too narrow, and would, in fact, constitute a meaningless formality". Motion at 2 (emphasis in original). The appellant argued that the specifics of a 1992 remand by the BVA had not been complied with because examinations provided had either not been conducted by a cardiologist, had not involved review of the entire claims file, and/or had not addressed whether symptoms of fainting in service were early manifestations of heart disorder. *Id.* at 3–4. The appellant argued: "The BVA on remand must afford the veteran another specialized medical examination, preferably an independent medical examination, conducted by a cardiologist". *Id.* at 5. The appellant also sought an independent medical advisory

opinion consistent with 38 C.F.R. § 20.901. *Ibid.* Additionally, the appellant argued that the Board's failure to provide sufficient reasons or bases for rejecting testimony by Dr. Adams, the veteran's treating physician, required remand. *Id.* at 12.

On October 10, 1995, the Secretary filed a response disputing the appellant's views on the completeness of the examinations provided and the sufficiency of the Board's reasons or bases. The Secretary concluded: "[T]o the extent that Appellant requests the Court to order development of the record beyond the terms requested by Appellee in his motion of June 15, 1995, Appellee respectfully submits that Appellant's requests are either unwarranted or without statutory authority". Secretary's Response (Resp.) at 14. As to a medical advisory opinion by a Board medical adviser [hereinafter BMAO], Dr. Rheingold, the Secretary's response appears to adopt the position that that opinion satisfied the criteria in the 1992 Board remand; the Secretary stated: "Given the detail of Dr. Rheingold's opinion, and the discussion provided regarding the evidence which could be said to support Appellant's position, Appellant's claim of its inadequacy is without merit". Resp. at 12. The appellant filed a reply reiterating his position and noting, as to the BMAO, a pleading filed on March 20, 1994, by the Secretary in *Williams (Margie) v. Brown,* 8 Vet.App. 133 (1995), that acknowledged that use of a BMAO appeared to be precluded by *Austin* and thus sought a remand. Reply at 3. On August 11, 1995, the Court vacated the Board decision at issue in *Williams* and remanded that matter. *Williams,* 8 Vet.App. 133 (1995).

In the instant case, a February 22, 1996, decision by a three-judge panel vacated the Board decision on appeal and remanded the matter. The Court based its remand upon the *Austin* right of the appellant to submit additional evidence. However, the Court also concluded:

> If any use of the BMAO is made on remand, "the BVA should answer the questions posed by this Court in *Austin.*" *Williams*[, 8 Vet.App. at 137]. First, the BVA must give an adequate statement of reasons or bases "for noncompliance with

the notice requirements in 38 C.F.R. § 1.551(b) and (c)" (1995), or explain why compliance was not necessary pursuant to 38 C.F.R. § 1.12 (1995). *Ibid.* Second, the Board must explain "why it requested the BMAO instead of remanding the case to the [Department of Veterans Affairs (VA) regional office (RO) ] under 38 C.F.R. § 19.9" (1995), *ibid.*, and, as that regulation provides, "specifying the action to be undertaken". *Austin,* 6 Vet.App. at 553. Finally, "the Board must provide an adequate statement of reasons or bases as to how it complied with [BVA] Memorandum" No. 01–94–17, of August 16, 1994, which provides that (1) BMAOs should no longer be used on individual appeals; (2) a BMAO which had been obtained but not yet transferred to a Board Section was to be removed from the record and destroyed; and (3) a BMAO already transferred to a Board Section was not to be used unless it was determined that such use did not prejudice the veteran. *Williams, supra.*

If, on remand, the Secretary makes no use of the BMAO, then further development of the case *would be needed* because the record would then be underdeveloped. *See West (Carleton) v. Brown,* 7 Vet.App. 70, 78 (1994) (inadequate record frustrates judicial review). Specifically, further development—a medical opinion—*would be needed* on the questions whether the heart condition is congenital, whether any preexisting condition was aggravated by service, and whether a relationship exists between the in-service symptoms and the current disability. The Board may seek to obtain that development itself through a VA Veterans Health Administration or non-VA [independent medical expert] IME opinion . . ., or through remand to the RO for it to obtain an IME opinion . . ., or to provide for a VA examination of the veteran. . . . *Any medical opinion obtained should be rendered by a cardiologist after review of all pertinent medical records regarding the veteran.*

*Perry,* 9 Vet.App. at 6 (emphasis added). The Court specifically remanded the claim "for expeditious further development and readjudication" as to the appellant's claim for service connection for a heart disorder.

*Ibid.* (citing Veterans' Benefits Improvements Act (VBIA), Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court), and *Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995)). On May 17, 1996, the Court issued its mandate in the case.

Subsequently, the Secretary sought to disqualify attorney Kabatchnick in several other cases because of his prior work as an employee of the Secretary's Office of General Counsel (O.G.C.). In particular, on April 19, 1996, the Secretary filed a motion to disqualify attorney Kabatchnick in *Wandel v. Brown,* No. 94–1110; footnote 1 addressed the instant case as follows: "In the event Appellant elects to file an application for attorney fees and expenses, the Secretary *will file his objection* to Appellant's application at that time" (emphasis added). On June 13, 1996, the appellant filed a timely EAJA application for an award of attorney fees and expenses, claiming $16,500.00 in fees based on 132 hours of work and $302.71 in expenses, and, on June 16, 1996, submitted a response in this case to a motion to disqualify in *Violet v. Brown,* and related cases (*see* Appellant's Response to Appellee's Motion to Order the Disqualification of Craig M. Kabatchnick Pursuant to Model Rule 1.9(A), and to Consolidate this Case with Similarly Situated Cases, or, in the Alternative, to Stay Further Proceedings). On July 1, 1996, proceedings in this case were stayed pending this Court's decision on the disqualification issue in *Violet v. Brown,* 9 Vet.App. 530 (1996). The Court's November 1996 decision in *Violet, supra,* disqualified attorney Kabatchnick from representing the appellant in that case on the ground that Mr. Kabatchnick had entered an appearance on behalf of the Secretary in the same case by signing a transmittal of a copy of the BVA decision. *Id.* at 533. *But see id.* at 533–34 (Steinberg, J., concurring in part and dissenting in part). In this case, Mr. Kabatchnick had also signed a November 25, 1994, transmittal to the Court of a copy of the BVA decision on appeal, and, in December 1996, the Court (in light of the Secretary's assertion in the *Wan-*

*del* footnote) ordered Mr. Kabatchnick to show cause why he should not be disqualified from representing the appellant in the instant case on the basis of the Court's decision in *Violet, supra.* In January 1997, the appellant filed a response that, in the main, was concerned not with contesting the holding in *Violet* but with arguing that because the Secretary had never sought disqualification of Mr. Kabatchnick in this case he had therefore impliedly waived any conflict and that, in any event, the Court's holding in *Violet* should not bar an award of EAJA fees in the instant case. That response was not signed by Mr. Kabatchnick but by another attorney at Mr. Kabatchnick's firm, Gary Beaver, who had not entered an appearance in the case. Mr. Beaver then filed a first supplement to the EAJA application on January 15, 1997; that supplement corrected the billing rate for the original application and sought EAJA fees for preparing the January 1997 show-cause response (not the June 1996 response), claiming that the Secretary should have addressed disqualification in a timely manner. He claimed an additional 24.75 hours in EAJA fees and $81.79 in expenses for preparing the response.

On January 28, 1997, the Court sought the Secretary's response to the EAJA application. The Secretary sought an extension of time, and the appellant filed an opposition and a second supplement, both signed by Mr. Beaver, seeking an additional 3.75 hours and $15.94 in expenses for preparing the opposition. On March 31, 1997, the Secretary filed his response to the EAJA application. The response did not further address the *Violet* issue, and it challenged the EAJA application on only two points, otherwise not contesting that (a) the appellant was a prevailing party, (b) his net worth did not exceed $2,000,000, (c) the Secretary's position was not substantially justified, and (d) the appellant had received a final judgment. The Secretary argued that the appellant's "effort [after the Secretary's motion for remand], being not substantiated by record or supported in law, availed him nothing", and that therefore "special circumstances" warranted denial of the fee request (Resp. at 15); the Secretary argued that, in the event that the Court were to award fees, the fee amount sought was unreasonable and explained why as to certain of the hours claimed. On May 30, 1997, the appellant filed a reply and a third EAJA supplement seeking an additional 31.25 hours in EAJA fees (including four hours of work by paralegals) and $435.39 in expenses for preparing the reply; both documents were again signed by Mr. Beaver.

On November 6, 1997, the appellant filed a motion requesting that the Court issue an order requiring the Secretary to show cause why he should not be held in contempt, pursuant to the Court's authority under 38 U.S.C. § 7265(a), for failing to comply with the May 17, 1996, mandate of the Court in this case. The appellant alleged that subsequent to issuance of the Court's mandate the Secretary did not return the appellant's claims file to the appropriate VARO for readjudication until October 25, 1996—a delay of five months (first delay). The appellant also stated that his claims file was, in March 1997, again forwarded to the O.G.C. for preparation of the Secretary's response to the appellant's EAJA application, that the claims file remained at the O.G.C. at the time of the filing of the appellant's November 6, 1997, motion in spite of the fact that the Secretary's response to the appellant's EAJA application was filed on March 31, 1997, and that the absence of the claims file from the RO prevented that office from proceeding with adjudication of the appellant's remanded claim for seven more months (second delay). The appellant also filed a fourth EAJA supplement, claiming an additional 3.5 hours in EAJA fees and $192.08 in expenses for preparing the motion; again, both documents were signed by Mr. Beaver.

On November 13, 1997, the Secretary filed a response and an erratum to that response in which he stated that an "administrative oversight" had delayed the return of the claims file to the RO until November 13, 1997. On November 19, 1997, the appellant filed a reply arguing that the Secretary had provided no explanation as to the first delay and that he had provided an inadequate explanation for the second delay, as to which the appellant sought additional explanation. This pleading also was signed by Mr. Beaver. On January 9, 1998, the Court sought an

additional response from the Secretary. A January 29, 1998, response from the Secretary addressed both delays, explaining that the first was occasioned by extensions sought by the appellant and that the second was attributable to administrative oversight.

On that same day, January 29, 1998, attorney Kabatchnick filed a motion to withdraw as counsel for the appellant; a deputy clerk of the Court stamp-granted it on February 4, 1998, and attorney Beaver filed a Notice of Appearance. On February 2, 1998, the appellant filed a reply to the Secretary's response in which he withdrew his motion as to the first delay, and on February 25, 1998, the appellant filed his fifth EAJA supplement, claiming an additional 5.45 hours in EAJA fees and $155.63 in expenses, and bringing the total attorney fee claimed to $23,922.02 plus expenses of $1,183.54; both pleadings were signed by Mr. Beaver. This case was then returned to the panel that had adjudicated the merits of the underlying appeal.

## II. Analysis

In its present form, this case implicates a panoply of issues: (1) The merits of the appellant's EAJA application, which includes the questions of (a) the impact of *Violet, supra,* if any, upon the appellant's EAJA application; (b) whether "special circumstances" warrant denying the application for EAJA fees or reducing the fees awarded; and (c) if not, whether and to what extent the fees sought in the application are reasonable; (2) whether sanctions should be levied against the Secretary for the second delay in returning the appellant's claims file to the RO; and (3) whether and to what extent (a) the supplements to the EAJA application regarding the *Violet* issue and (b) the November 1997 motion for an order directing the Secretary to show cause why he should not be held in contempt should be considered part of the EAJA application on the merits and to what extent the fees sought therefor are reasonable under the EAJA.

### A. EAJA Application

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F), as amended by section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, 4513 (1992). The appellant's June 13, 1996, EAJA application has satisfied the jurisdictional content requirements under 28 U.S.C. § 2412(d)(1)(B) within the applicable 30-day application period because it contained the following: (1) A showing that he was a "prevailing party" by virtue of the Court's remand (*Stillwell v. Brown,* 6 Vet. App. 291, 300–01 (1994)); (2) a showing that he is a party eligible for an award under the EAJA by attaching a declaration stating that at the time that his appeal was filed his net worth was less than $2,000,000; (3) an assertion that the position of the Secretary was not substantially justified; and (4) an itemized statement of the fees sought (now totaling, on the basis of the five supplements filed, $23,922.02 plus expenses of $1,183.54) supported by an affidavit from the appellant's counsel. *See Bazalo v. Brown,* 9 Vet. App. 304, 310 (1996) (en banc). In response to the EAJA application, the Secretary states that he does not contest the following: (1) That the appellant has obtained a "final judgment" within the meaning of the EAJA (28 U.S.C. § 2412(d)(2)(G)); (2) that the appellant is a "prevailing party" within the meaning of the EAJA (28 U.S.C. § 2412(d)(2)(B)); (3) that the appellant's net worth did not exceed $2,000,000 at the time that the appeal was filed (28 U.S.C. § 2412(d)(2)(B)); and (4) that the Secretary was not substantially justified in the underlying merits administrative decisionmaking (28 U.S.C. § 2412(d)(1)(A)). Resp. at 3. Accordingly, the Court holds that the timely filed and jurisdictionally effective EAJA application must be granted unless the Secretary has carried the burden of putting forth an affirmative defense, as discussed in part II.A.2, below. *See Bazalo, supra; see also March v. Brown,* 7 Vet.App. 163, 169 (1994); *Cook v. Brown,* 6 Vet.App. 226, 237 (1994) (holding that where Secretary had conceded issue of substantial justification, the Court "thus need not decide it"), *aff'd,* 68 F.3d 447 (Fed.Cir.1995).

■ *1. Relevance of Court's Decision in* **Violet.** In *Violet, supra,* the Court concluded that Mr. Kabatchnick's signing of a transmittal of a BVA decision to this Court constituted representation of the Secretary for the

purposes of Rule 1.9(a) of the Model Rules of Professional Conduct [hereinafter Model Rules] (made applicable to persons admitted to practice before this Court by Rule 1(b) of this Court's Rules of Admission and Practice, *see* 9 Vet.App. LV, LVI), which states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Rule 1.9(a). The Court further concluded in *Violet* that because Mr. Kabatchnick had represented the Secretary, because as attorney for the appellant on the merits in *Violet* he was appearing "in the same case", and because the Secretary had objected to Mr. Kabatchnick's appearance, he was disqualified from representing the appellant in that matter. *Violet,* 9 Vet.App. at 532–33.

As to the instant case, Mr. Kabatchnick similarly signed the transmittal of the BVA decision on appeal in the underlying merits adjudication. However, despite the Secretary's representation in the *Wandel* footnote that he would "file his objection" to attorney Kabatchnick's representation in "the event Appellant elects to file an application for attorney fees and expenses", the Secretary has never sought disqualification of Mr. Kabatchnick in the instant matter. Because the Secretary has not objected to Mr. Kabatchnick's representation—let alone done so in a timely manner—the Court declines to address the disqualification issue any further. *See Kafka v. Truck Ins. Exchange,* 19 F.3d 383, 386 (7th Cir.1994) (affirming district court's conclusion that party had waived disqualification argument by failing to file motion and quoting *Central Milk Producers Coop. v. Sentry Food Stores,* 573 F.2d 988, 992 (8th Cir.1978) for proposition that "[a] motion to disqualify should be made with reasonable promptness after a party learns of the facts which lead to the motion"); *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982) ("disqualification . . . is a drastic measure which courts should hesitate to impose except where absolutely necessary"); *Bucklinger v. Brown,* 5 Vet. App. 435, 436 (1993) (considering veteran to

have abandoned appeal as to issues not addressed in pleadings); *cf. Savage v. Gober,* 10 Vet.App. 488, 498 (1997) (declining to consider issue first raised by party in response to amicus brief). Our silence on this issue should not be interpreted as expressing any position on whether such a disqualification, were it to occur, would necessarily affect the appellant's entitlement to an award of EAJA fees. *See Shaw v. Gober,* 10 Vet.App. 498, 506 (1997) ("law gives the EAJA cause of action and standing to the client, not the attorney").

■ *2. Special circumstances.* Pursuant to 28 U.S.C. § 2412(d)(1), a Court may not make an EAJA award to a party if it "finds . . . that special circumstances make an award unjust". 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of raising this affirmative defense and then of demonstrating that such special circumstances militate against an EAJA award. *See Doria v. Brown,* 8 Vet.App. 157, 163 (1995). As the Court noted in *Doria,* "special circumstances" is not defined by statute but the legislative history of the EAJA suggest two species of special circumstances: "[S]ituations where the government proffers novel but credible extensions and interpretations of the law; and . . . situations 'where equitable considerations dictate an award should not be made'". *Id.* at 162.

The Court has not precisely articulated what is contemplated by "equitable considerations" dictating that an award should not be made, but the Court seems to have adopted a definition of the equitable-considerations prong of "special circumstances" that predominantly relies upon "unclean hands". In *Doria,* the Court noted decisions by the U.S. courts of appeals for the Second and the Third Circuits interpreting the "equitable considerations" prong to mean a party's "unclean hands". *Ibid.* (citing *Brinker v. Guiffrida,* 798 F.2d 661, 667–68 (3d Cir.1986); *Oguachuba v. INS,* 706 F.2d 93, 99 (2d Cir. 1983)); *see also Locher v. Brown,* 9 Vet.App. 535, 540 (1996) (noting that in *Doria,* the Court held that " 'equitable considerations' meant 'a prevailing party's unclean hands' "); *Pellerin v. Brown,* 10 Vet.App. 415, 421 (1997) (Kramer, J., dissenting) (disputing ma-

jority's determination that Secretary's administrative position was substantially justified and adding that Secretary's argument, not addressed by majority, that special circumstances existed because parties adopted Secretary's joint motion for remand "and the appellant's attorney made no significant contributions" was inapposite to caselaw because that circumstance was not contemplated by *Doria's* definition of special circumstances to mean "novel but credible extensions and interpretations of the law" or "unclean hands").

█ In the instant matter, the Secretary specifically disavows the position that the appellant has "unclean hands" and asks that the Court "expand the term 'equitable considerations' to include cases such as are present here". Resp. at 12. The Secretary's position is that the appellant's further pleadings after the Secretary filed his motion for remand "availed him nothing" and that thus the Secretary "should not be compelled to compensate Appellant for the work of his attorney that was completed *after* the Secretary confessed error". *Id.* at 15. For the reasons that follow, the Court concludes that it need not reach the question of whether "equitable considerations" can properly be expanded to encompass a situation where an appellant rejects a motion for remand offered by the government and unsuccessfully seeks additional relief, because that is not the situation in the instant case.

Even assuming, without deciding, that a special-circumstances affirmative defense ("that special circumstances makes *an award* unjust", 28 U.S.C. § 2412(d)(1)(A)) is available to bar some but not all EAJA fees sought, the Court holds that the remand proposed by the Secretary and the remand ordered by the Court were not equivalent, and thus the Court cannot conclude that the appellant's continuing to pursue his case after the Secretary's motion for remand was filed "availed him nothing". In fact, as clearly revealed by the facts described in part I, above, the remand proposed by the Secretary would explicitly have provided the appellant only with an opportunity to submit additional evidence under *Austin* and *Quarles,* both *supra.* However, the Court's remand specifically charged the Board with

answering the questions posed in *Austin* before it proceeded to apply the BMAO opinion and then, if necessary, to seek an additional opinion from a cardiologist. *Perry, supra.* The Secretary's remand motion did not discuss BVA Memorandum No. 01–94–17, which implemented the *Austin* decision and severely restricted—if not practically excluded—the use of BMAOs and which had been issued on August 16, 1994, ten months before his June 15, 1995, motion for remand and over a year before his October 10, 1995, response to the appellant's remand motion. In fact, the Secretary's reply to the appellant's remand motion appears to have contemplated the unrestricted use of the BMAO in this case, noting that "[g]iven the detail of Dr. Rheingold's opinion, and the discussion provided regarding the evidence which could be said to support Appellant's position, Appellant's claim of its inadequacy is without merit". Response at 12. Indeed, the Secretary's remand motion itself appears to have contemplated the use of the BMAO opinion on remand—as an opinion that satisfied the strictures of the Board's 1992 remand order—without ever considering whether the Board could do so consistent with the Court's opinion in *Austin* and BVA memorandum No. 01–94–17.

In sum, the Court's opinion in *Austin* contemplated at least *two* remedies for an appellant: (1) A right to submit additional evidence in response to evidence acquired since the last Statement of the Case (SOC) or Supplemental SOC and (2) the application of certain procedural safeguards that place a high hurdle in the path of the Board's use of a BMAO. The Secretary's remand motion did not address the second remedy and the Court, in articulating that second remedy, expressly required significantly greater relief than was contemplated by the Secretary's proposed remand. *See Perry, supra.* Having said that, however, it is quite possible that the relief actually provided by the Board would have been the same without the appellant's contentions and October 1995 motion and the specificity included in the Court's panel remand order—that is, that the Board would, on its own, have correctly applied *Austin* and the Board's own Memorandum No. 01–94–17. It is equally possible that the

relief would not have been the same and hence that the contentions of the appellant, his October 1995 motion, and the directions in the Court's February 1996 order precipitated more relief than would have followed had the Secretary's remand motion been granted by the Court. Moreover, as we conclude in part II.A.3.a., below, in the context of the reasonableness of the fees sought, the appellant's attorney was required to do more than merely accept the Secretary's motion for a remand. *See Jaffee v. Redmond,* 142 F.3d 409, 416–17 (7th Cir.1998) (in determining reasonableness of fee award under 42 U.S.C. § 1983, it "would be at odds with the norms of professional responsibility" if "courts [were to] decline to award fees to the plaintiffs' attorneys solely because certain zealous advocacy that was appropriately provided their clients did not contribute directly to that success").

Hence, the Court cannot conclude that the appellant's contentions and remand motion gained him. no further relief and the Court thus rejects the Secretary's special-circumstances affirmative defense. In doing so, the Court notes the rather unusual circumstance of the Secretary's having moved in June 1995 for the Court to lift a stay (issued for the purpose of permitting the appellant to obtain new representation) in order for the Court to *grant* a motion for remand (not simply to permit the Secretary to file it) at a time when the appellant was unrepresented. What then remains is a determination of the extent to which the fees sought by the appellant are reasonable under the EAJA.

**3.** *Reasonableness of fees.* Having determined that the appellant is entitled to an award of *some* EAJA fees, the Court must now determine what portion, if not all, of the $23,922.02 in attorney fees plus expenses of $1,183.54 claimed constitutes "reasonable" fees and expenses for the litigation pursuant to 28 U.S.C. § 2412(d)(2)(A). The Court discussed at length in its decision in *Ussery v. Brown* the means for determining a "reasonable" EAJA award:

> Once it is determined that a claimant is entitled to an EAJA award, the Court still must determine what is a "reasonable" fee. *Uttieri v. Brown,* 7 Vet.App. 415, 418

(1995) (citing [*Commissioner, INS v. Jean,* 496 U.S. 154, 160–61, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ] ). In so doing, the Court must look to "the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate." *Elcyzyn* [ *v. Brown,* 7 Vet.App. 170, 177 (1994) ] (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983)). In determining the number of hours which were "reasonably spent," the Court may consider a number of factors, including whether the work performed was duplicative, if an attorney takes extra time due to inexperience, or if an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys. *See Sandoval v. Brown,* 9 Vet.App. 177 (1996). The Court "may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts." *Vidal v. Brown,* 8 Vet.App. 488, 493 (1996) (citing *Jordan v. U.S. Department of Justice,* 691 F.2d 514, 518 (D.C.Cir.1982)). Finally, the Court may consider whether [there are] additional factors derived from the "results obtained" which may or may not justify an adjustment: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Elcyzyn,* 7 Vet.App. at 171 (citing *Hensley,* 461 U.S. at 434 [103 S.Ct. 1933] ).

*Ussery,* 10 Vet.App. 51, 53 (1997).

In the instant matter, the Secretary requests that the Court find "that none of counsel's efforts were necessary, beyond the point at which he was apprised of Appellee's motion to lift the stay of proceedings and remand Appellant's case on June 16, 1995". Resp. at 20. Alternately, the Secretary argues that if the Court finds the appellant entitled to attorney fees for the period *after* June 16, 1995, the claimed hours should be reduced because they do not comport with "the specific stage of the proceeding, counsel's experience, the tasks specified [in counsel's itemization], and the ultimate result obtained". Resp. at 22–26. The Court will

discuss the fees claimed in the EAJA application and its various supplements in turn.

**a. Merits work and EAJA application:** The Court notes that the parties do not dispute the hourly rate claimed for work performed ($120.60 per hour) or the time expended between June 1, 1995, and June 16, 1995 (12.25 hours). The Court therefore finds reasonable the rate and the 12.25 hours claimed for the pre-June 16, 1995, work. *See Smith (Wilfred) v. Brown,* 8 Vet.App. 327, 331 (1995) (accepting hourly rate where uncontested by Secretary); *Penny v. Brown,* 7 Vet.App. 348, 352 (1995) (finding appellant's accounting "adequate" where Secretary did not contest hourly rate or hours claimed).

■ As to the Secretary's contention that *all* fees subsequent to the Secretary's June 16, 1995, motion for remand should be precluded as unreasonable, the Court rejects this position. First, it is inconsistent with the conclusion we reached in part II.A.2, above, as to the equal possibility that the appellant's contentions and October 1995 motion along with the Court's remand order led to greater relief for the appellant than would have resulted from a simple granting of the Secretary's remand motion and the incorporation of that motion in a Court order remanding the claim. Moreover, even in a case where a Secretarial remand motion that was opposed by the appellant *had* eventually yielded a Court decision providing an outcome identical to that sought by the Secretary, *some* time subsequent to the filing of that remand motion could have justifiably been devoted to the appellant's counsel's reviewing that motion, determining the propriety of accepting it and the extent to which it supplied complete relief, communicating about these matters with counsel for the Secretary, and preparing an appropriate pleading in response. Indeed, such legal work is required; the Secretary's suggestion that an appellant's counsel should accept a motion for remand without further review neglects the obligation of counsel to provide competent and diligent representation and to act with zeal in advocating on behalf of his or her client, *see* Model Rules 1.1, 1.3, 1.3 cmt. 1. *See Jaffee, supra; see also National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1332–33 (D.C.Cir. 1982) (district court did not err in awarding reasonable attorney fees in Freedom of Information Act case for time expended by appellees—following motion by appellants for preliminary injunction—even though appellees later conceded "most of the contested issues").

The Secretary has raised objections to the number of hours claimed for record review and preparation of the appellant's motion for remand. Resp. at 21–26. In *Ussery,* the Court stated: "[T]he Secretary has offered no evidence or standard for the Court to apply, other than his own apparent conclusion that, perhaps, a more efficient attorney might have been able to accomplish these tasks in less time." *Ussery,* 10 Vet.App. at 54. The Court went on to state:

> The bold yet bald statement that, in the Secretary's view, "it is simply not reasonable to spend 34 hours reviewing the claims file and the record in this case" is of no practical assistance to the Court due to the absence of any contextual reference such as, for example, the size of the claims file.

*Ibid.* In *Sandoval,* 9 Vet.App. at 181, the Court had concluded: "Although the Court has addressed in detail the Secretary's assertions of excessive time expended, the fact that these assertions are mere allegations unsupported by evidence, is alone dispositive." *See also Vidal,* 8 Vet.App. at 493–94 ("[T]he Court in its discretion is not willing to engage in an exercise of hypothetical comparability of seemingly endless possibilities. Neither the Secretary nor the record provides any basis for the Court to conclude that the total amount of requested attorney fees in this case is 'grossly inflated.' ... Under the circumstances, the Court exercises its discretion by refusing to adopt, as a finding, the Secretary's unsupported assumption.... In view of the failings of the Secretary, the Court will not exercise its discretion to reduce the 2.6 hours.").

■ These cases emphasize that the Court will not make reductions in fees based solely upon the Secretary's unsupported allegations. *Ussery, supra* ("[u]nsupported allegations of excessive time expended are insuffi-

cient to justify a reduction in hours"); *see also Sandoval, supra.* Moreover, and regardless of the quality or quantity of the Secretary's—or the appellant's—arguments, the Court, acting in the same capacity as a U.S. District Court, has discretion to order a reduction in fees when the Court finds it appropriate, although we do not suggest that the Court is required to review for reasonableness in the absence of the Secretary's presenting evidence and a standard. *See Elcyzyn,* 7 Vet.App. at 177 ("court has considerable 'discretion' and 'flexibility' in determining 'the amount of the fee award' " (quoting *Jean,* 496 U.S. at 161, 110 S.Ct. 2316)); *see also Ussery, supra* ("Secretary has made no argument *and the record does not reveal* that there are any additional factors which would justify a reduction in fees" (emphasis added)). In this case, the Court finds that the Secretary has made more than mere conclusory assertions, and, applying the criteria articulated in *Ussery, supra,* the Court, in the exercise of its discretion, finds some reductions in order.

■ The Secretary essentially objects to two aspects of the fees claimed: (1) The time spent on record review and (2) the time spent in preparing the appellant's motion for remand. Here the Secretary gave the Court more than he did in *Ussery.* He states:

> The record on appeal in this cases consists of 232 pages. The "center stack" of Appellant's VA claims file, relative to all adjudication and correspondence, consists of approximately 242 pages, and is approximately one and one half inches thick.
>
> . . . .
>
> In his 17 page motion for remand, Appellant essentially reiterates Appellee's motion to remand.

Resp. at 22, 25.

As to record review, the appellant appears to claim approximately 30 hours for record review (10.25 hours on June 30, 1995; 3 hours on July 7, 1995; 1 hour on July 12, 1995; 4.5 hours on August 3, 1995; 1 hour on August 7, 1995; 5 hours on August 16, 1995; and 5.25 hours on August 17, 1995), although some of these itemizations include several tasks in addition to claims-file or record review for which the time spent, including record review, is not differentiated. The Secre-

tary urges a 50-percent reduction in these hours. Given the size of the ROA (less than 250 pages) (and the apparent size of the claims file—as represented by counsel for the Secretary, Annex B to Resp. at 4) ("portion of the center stack [of the claims file, where the left stack contains payment information and the right stack contains information relating to representation] representing the period of time from the VA recorded Appellant's discharge from military service up to and including the BVA decision on appeal . . . is approximately one and one half inches thick")—and the extensive experience of counsel for the appellant in reviewing VA claims files and ROAs, and allowing that some of that time was nevertheless spent upon tasks other than pure record review, the Court finds, in the exercise of its discretion, that some of the 30 hours spent in such review was not reasonable on the facts of this case and will reduce that figure by disallowing 10 hours. *See Shaw,* 10 Vet.App. at 501 (Court reduces by 3.0 hours 3.6 hours claimed to prepare motion for extension of time); *see also Ussery, supra; Vidal,* 8 Vet. App. at 493 ("Court may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts").

■ The Secretary also objects to the 35.25 hours that he calculates are claimed for preparing the appellant's remand motion (5.25 hours again on August 17, 1995; 5 hours on August 30, 1995; 7 hours on September 8, 1995; 4.25 hours on September 11, 1995; 4.5 hours on September 13, 1995; 1.5 hours on September 15, 1995; 3.75 hours on September 18, 1995; 1.5 hours on September 19, 1995; and 2.5 hours on September 20, 1995). The Secretary urges a one-third reductions in the hours claimed. The Court notes that some of the appellant's itemizations include several tasks in addition to preparation of the remand motion, that the time spent is not differentiated, and that there is some overlap with the hours that the Secretary attributes to record review. The Court, having considered the 5.25 hours expended on August 17, 1995, as part of record review, will not award fees for those hours again as part of the time expended on prepa-

ration of the remand motion. The Court thus concludes that the appellant claims approximately 30 hours (35.25 less 5.25 hours) for preparation of the remand motion. Given the fact that counsel was already familiar with the record, the narrow issues involved in the case, counsel's demonstrated familiarity with the Court's jurisprudence, and the Secretary's having already filed a motion for remand (albeit on narrower grounds than sought by the appellant), and allowing that not all of the hours there claimed were necessarily expended solely upon preparation of the motion, the Court finds, in the exercise of its discretion, that some of the claimed hours are not reasonable and will reduce them by one-third, disallowing 10 hours claimed for motion preparation on those days. *See Shaw, supra; see also Ussery* and *Vidal,* both *supra.*

Furthermore, the Secretary objects to the number of hours claimed for research (again seeking reductions for time expended where the time is undifferentiated and includes several tasks, some of which were treated as time expended for record review or preparation of the remand motion and were reduced by the Court, above), for preparing the appellant's reply to the Secretary's response to the appellant's motion for remand, and for preparing the EAJA application. Given the overlap with the other itemizations already reduced by the Court, the consequent overlap in reductions sought by the Secretary, and the highly speculative nature of the Secretary's objections on this matter, the Court is not persuaded that the time expended by the appellant's counsel on research (totaling 16.75 hours) and preparation of the reply (totaling 17.25 hours) not otherwise reduced under another itemization is unreasonable. Moreover, the Secretary's assertion that 9.5 hours is too much time for the preparation of the EAJA application given "the simplicity of this case" (Resp. at 26) is not supported by any explanation or analysis. *See Sandoval,* 9 Vet.App. at 182 (Court refuses to find 5.5 hours "excessive amount of time" to prepare fee application); *see also Ussery,* 10 Vet.App. at 54 ("[u]nsupported allegations of excessive time expended are insufficient to justify a reduction in hours").

Thus, of the 132 hours claimed in the original EAJA application, the Court disallows 20 hours as unreasonable.

***b. First supplement:*** For the reasons discussed in part II.C., below, the Court concludes that the EAJA fees claimed in the first supplement to the EAJA application, filed on January 15, 1997, and the claim of 24.75 hours for preparation of the appellant's response to the Court's show-cause order regarding the *Violet* issue, are properly part of the EAJA claim. The Court thus proceeds to the reasonableness of the hours claimed in that supplement.

Although the appellant had previously analyzed the question of disqualification in a pleading submitted in this case (Appellant's Response to Appellee's Motion to Order the Disqualification of Craig M. Kabatchnick Pursuant to Model Rule 1.9(A), and to Consolidate this Case with Similarly Situated Cases, or, in the Alternative, to Stay Further Proceedings, filed on June 16, 1996), the appellant has never claimed EAJA fees for ***that*** filing and his January 15, 1997, response to the Court's show-cause order states that that pleading was "erroneously" filed in this case because the Secretary had not moved to disqualify Mr. Kabatchnick. The January 15, 1997, response to the Court's December 1997 order was not duplicative of that prior pleading. Instead, the January 1997 response addresses issues unique to the instant matter, including, inter alia, the arguments that the Secretary had implicitly waived disqualification of attorney Kabatchnick, that the *Violet* holding was inapplicable because the Secretary had not moved to disqualify attorney Kabatchnick, and that disqualification of the appellant's counsel—if ordered by the Court—should not affect the appellant's entitlement to EAJA fees. Thus, the great bulk of that response is devoted not to the proposition that Model Rule 1.9(a) ought not to operate to disqualify Mr. Kabatchnick—which was the position taken in *Violet* and the June 16, 1996, pleading filed in this case "erroneously"—but to the proposition that even if *Violet* were to apply in the abstract it ought not to apply in practice to prohibit the award of EAJA fees. Because such argument was warranted to

respond to the Court's December 1996 show-cause order as to why Mr. Kabatchnick should not be disqualified from representing the appellant in this case in light of *Violet, supra,* and to protect the implied assault upon all the EAJA fees sought, because the Secretary has not specifically objected to the hours claimed for preparation of this pleading, and because the Court does not find them unreasonable insofar as they are not duplicative of the prior work, the Court finds the 24.75 hours of attorney fees claimed in the first supplement to be reasonable.

*c. Second and third supplements:* The appellant's second supplement to his EAJA application claims 3.75 hours of work and expenses of $15.94 for preparation of a motion opposing the Secretary's motion for an extension of time, and the appellant's third supplement to his EAJA application seeks 31.25 hours of work and $435.39 in expenses for preparing a response to the Secretary's response to the EAJA application. The Secretary has not objected to these claimed hours as unreasonable. Insofar as they are part of the litigation concerning the EAJA application, which for the purpose of EAJA litigation is "part and parcel" of the fees awarded on the underlying merits, *Jean,* 496 U.S. at 162, 110 S.Ct. 2316; *Cook,* 6 Vet.App. at 240 (quoting *Jean, supra* ), and insofar as there is no objection as to their reasonableness, the Court concludes that they may properly be awarded, and finds the 35 hours of attorney fees claimed in the second and third supplements also to be reasonable.

*d. Fourth and fifth supplements:* The fourth supplement seeks EAJA fees for 3.5 hours and expenses of $192.08 for preparation of the motion for an order for the Secretary to show cause why he should not be held in contempt for failing to return the appellant's claims file to the RO, and the fifth supplement seeks EAJA fees for 5.45 hours of work and $155.63 in expenses for preparing a response to the Secretary's response to the Court's order that issued in response to the foregoing motion. For the reasons discussed in parts II.B. and C., below, the Court concludes that no fees or costs and expenses may be awarded for the preparation of the fourth and fifth supplements.

*e. Costs and expenses:* The Secretary does not contest any costs and expenses sought by the appellant. *See Vidal,* 8 Vet. App. at 495 (Secretary did not contest amount of costs and expenses and that amount was awarded); *Camphor v. Brown,* 8 Vet.App. 272, 278 (1995) (same), *recons. denied,* 8 Vet.App. 483 (1996). Moreover, although the Court has found not reasonable some of the hours of work claimed for EAJA fees and reduced them accordingly, the Secretary has not suggested any grounds for apportioning that reduction in hours reasonably expended among expenses to achieve a similar reduction in expenses, and the Court declines to assume any necessary relationship between a reduction, in this case, in the fees awarded for record review and preparation of a motion for remand and the claimed expenses. *See Elcyzyn,* 7 Vet.App. at 183 (declining to reduce expenses where expenses claimed for research could not "clearly be limited to" issue where Secretary's position was substantially justified and Secretary had not "provided any grounds for such an apportionment"). The Court thus concludes that the costs and expenses sought may be awarded except for costs and expenses reflected in the fourth and fifth supplements for which no EAJA fees will be awarded, as discussed in part II.B. and C., below. Thus, of the total of $1,183.54 in claimed expenses, the Court allows $853.83, the figure claimed on the third supplement as the cumulative total to the time of that filing.

*f. Total fees and expenses to be awarded:* Thus, of the total of 196.70 hours claimed for attorney fees and based on the amounts disallowed by the Court in part II.A.3.a., d., and e., above, the Court awards EAJA fees for 167.75 hours, at $120.60 per hour, for an award of $20,230.65. The Court also awards the undisputed 4 hours of paralegal fees at $50.00 per hour, in the total amount of $200. The Court adds to that the total expenses, $853.83, awarded in part II.A.3.e., above. Thus, the combined EAJA attorney fees and expenses awarded under the application will total $21,284.48.

### B. Motion Seeking Show–Cause Order for Secretary's Failure to Comply with the Court's Mandate

■ The appellant's motion seeking a show-cause order for the Secretary's failure to comply with the Court's mandate by failing to return the claim file to the RO is properly before the Court. *See National Presto Indus. v. Dazey Corp.,* 107 F.3d 1576, 1581 (Fed.Cir.1997) ("[e]ven after final judgment a district court retains ongoing jurisdiction to consider violations of its orders and judgment"); *see also Jones (Joseph) v. Derwinski,* 1 Vet.App. 596, 608 (1991) (where Secretary had failed to correct false statement before Court, Court ordered, pursuant to contempt authority, sanctions in form of expenses and attorney fees); *cf. Moore (Robert) v. Derwinski,* 2 Vet.App. 67, 68 (1992) (per curiam order) (construing appellant's request for enforcement of the Court's decision as a petition for extraordinary relief). Although the appellant did not specifically seek sanctions against the Secretary, the Court's January 9, 1998, order requested that the Secretary show cause "why the Court should not hold the Secretary in contempt of Court and impose sanctions accordingly". Insofar as the appellant has withdrawn his motion concerning the first delay and expressly acknowledged that that delay was occasioned, in part, by the appellant's own motions, the Court concludes that sanctions are not warranted as to the first delay. The question is thus whether the second delay—between the time in March 1997 when the Secretary's response was filed to the appellant's EAJA application and its return to the RO in November 1997 (more than seven months)—warrants the imposition of sanctions by this Court.

In *Jones,* the Court noted that in considering sanctions it "must take care to determine that the conduct at issue actually abused the judicial process" and found that "the failure on the part of the representatives of the Secretary to correct a statement which they learned was false directly abused the judicial process". *Jones,* 1 Vet.App. at 607. In *Ebert v. Brown,* 4 Vet.App. 434, 437 (1993), the Court noted that "finding that the conduct at issue constituted or was tantamount

to bad faith is a precondition to imposing sanctions under the Court's inherent power" and found that a two-year delay in providing a medical examination was "inexcusable" but was not subject to sanctions. Upon review of the matter here, and for the reasons that follow, the Court can find no such willful abuse of judicial process or bad faith on the part of the Secretary with respect to the delay in returning the claims file to the RO. In fact, the Secretary has stated that the appellant's claims file languished in the O.G.C. after the filing of the Secretary's response to the appellant's EAJA application as a result of "administrative oversight" (Response at 10)—an "inadvertent error", *Kaplan v. Brown,* 7 Vet.App. 425, 428 (1995) (per curiam order) ("failure to cease all further debt collection activities was an inadvertent error caused by the complexity of the computer system at VA's Debt Management Center and does not constitute the type of conduct which would support the imposition of sanctions"). The Secretary has stated that, at the time that the appellant's claims file was transferred to the O.G.C. in March 1997, the procedures described in a May 9, 1997, response to an order by the Court in *Neumann v. Gober,* U.S. Vet.App. No. 96–1726 (appellant's informal brief filed Oct. 10, 1997), were not as yet in effect and so the arrival of the file in the O.G.C. and the filing of the response to the appellant's EAJA application did not trigger those procedures. Response at 9–10.

Accordingly, because there is no evidence that the claims file was knowingly retained in the O.G.C., because—apparently—no processes were in effect to require its certain return, because the appellant himself delayed until November 1997 in requesting the return and did so, apparently, by seeking a show-cause order in this Court rather than seeking return of the file directly through administrative channels, and because the Secretary acted promptly to return the claims file to the RO upon being informed by the appellant's November 1997 motion that stated that action at the RO was being delayed, the Court cannot find the sort of abuse of judicial process contemplated by *Kaplan, Ebert,* and *Jones,* all *supra.* The Court stresses, however, that its declining to im-

pose sanctions does not bestow regularity upon this impermissible delay, especially now in light of the assurances provided to the Court in *Neumann, supra,* as to "earlier release of the claims file by the [G.C.O.] and strategic copying of the claims files by the ROs and the Board for use in remands and motions for reconsideration" and as to the return of claims files to ROs as soon as possible after the 30-day period for supplementing the ROA has expired in a particular case.

## C. Severability of EAJA Supplements

Because this EAJA application in its first supplement (regarding the *Violet* issue) and its fourth and fifth supplements (regarding the motion seeking a show-cause order) incorporates material seemingly tangential to the pursuit of either the underlying merits or the EAJA application itself, the Court must determine to what extent the fees sought for those purposes are part of the "single action" that is normally contemplated in an appellant's application for EAJA fees. *See Shaw,* 10 Vet.App. at 501 ("merits and the EAJA application comprise a single action"); *see also Jean,* 496 U.S. at 162, 110 S.Ct. 2316 ("We find no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that same application."). The U.S. Supreme Court in *Jean* suggested that the court reviewing the EAJA application should make *one* review for prevailing-party status and then, if there is an allegation of substantial justification or unjust circumstances, another review. The remainder of the analysis devolves upon "reasonable". *Id.* at 160, 110 S.Ct. 2316. However, in *Shaw,* the Court held that litigation over the fee agreement between counsel for the appellant and the appellant was "relate[d] to the EAJA application in only a collateral way." The Court concluded there:

> Regardless of the outcome of the instant fee-agreement litigation, the identical EAJA fee award will be made as to the underlying case and the fees for those fees. The fee-agreement litigation does not involve the United States, the party that pays EAJA awards, in the same way as

does the litigation over the EAJA application.

*Shaw,* 10 Vet.App. at 502.

Applying the *Shaw* standard to litigation over the *Violet* issue, the Court concludes that it did not involve the sort of "collateral" matter that *Shaw* concluded was "not a part of the 'civil action brought against the United States' for purposes of 28 U.S.C. § 2412(d)(1)(A) and *Jean, supra*". *Ibid.* The Court's disposition of the *Violet* issue might have had preclusive effects upon the award of EAJA fees, and thus the appellant's filings on that issue bore directly upon the question of whether there would be an award of EAJA fees at all—the appellant was, in effect, defending the EAJA application itself in the process of arguing against disqualification of his attorney. Additionally, the government was very much a party to that litigation insofar as it was the Secretary's motion in *Violet* and the footnote in *Wandel,* stating that he would propose disqualification if an EAJA application were filed in the instant case, that led to the Court's show-cause order. Because the response to the *Violet* order was directly related to the EAJA litigation, the Court concludes that the only relevant issue with regard to the first supplement is the reasonableness of the fees, which the Court has already disposed of in part II.A.(3)(b), above.

■ As to the appellant's November 1997 motion for a show-cause order, which occasioned the fourth and fifth supplements, assuming, without deciding, that that motion did not involve a "collateral" matter under the *Shaw* criteria and that that issue was not severable, the Court nonetheless concludes that the appellant has, as a result of this order, not prevailed on that matter; the Court did not issue such an order, and the Court has not, as decided under part II.B., above, found the Secretary in contempt. *See Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933 (in determining reasonableness of fees claimed, court must examine " 'results obtained' ... where [an appellant] is deemed 'prevailing' even though he succeeded on only some of his claims for relief"; "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treat-

ed as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim"); *cf. Jaffee,* 142 F.3d at 413 ("when claims are interrelated ... time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims"). The Court thus denies attorney fees and expenses for the work itemized in the fourth and fifth supplements to the EAJA application. To the extent that the appellant might urge that he did achieve his ultimate, if unspoken, goal of getting the file returned to the RO, he did not state that goal and we cannot conclude that he prevailed on this matter because, given the existence of alternative routes to achieving this result that he did not pursue, the filing of the motion cannot be found to be a *"necessary* and important factor in achieving the relief desired". *Lematta v. Brown,* 8 Vet.App. 504, 509–10 (1996) (outlining "catalyst" theory from general EAJA caselaw and quoting *Heeren v. City of Jamestown, Ky.,* 39 F.3d 628, 631 (6th Cir.1994) (emphasis added)).

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the appellant's EAJA application is granted in the amount of $21,284.48 ($20,430.65 in reasonable attorney fees and $853.83 in uncontested costs and expenses), which reflects the reductions itemized in part A.3.a. and e., above, and the denial of all EAJA fees and expenses sought in the fourth and fifth supplements to the EAJA application, as explained in parts II.A.3.d. and II.B. and C., above.

IT IS SO ORDERED.