# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-1350(E)

CHARLES L. SWANAGAN, APPELLANT,

AND

No. 19-3258(E)

JESSE B. TURMAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellants' Application for Attorney Fees and Expenses

(Argued September 11, 2020                          Decided June 23, 2021)

*Harold H. Hoffman, III*, with whom *Evan Snipes*, both of Arlington, VA, were on the pleadings for appellant Charles L. Swanagan.

*Harold H. Hoffman, III*, with whom *Britney Sutton*, both of Arlington, VA, were on the pleadings for appellant Jesse B. Turman.

*Brandon T. Callahan*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Kristen D. King-Holland*, all of Washington, D.C., were on the pleadings for the appellee in the case of Charles L. Swanagan.

*Brandon T. Callahan*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, all of Washington, D.C., were on the pleadings for the appellee in the case of Jesse B. Turman.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

BARTLEY, *Chief Judge*: Before the Court are applications from veterans Charles L. Swanagan and Jesse B. Turman for awards of attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). This Court has jurisdiction under 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Appellants request, among other

things, a cost-of-living (COL) increase in excess of EAJA's $125 statutory maximum hourly rate for work performed by an attorney, Mr. Harold H. Hoffman, while in Quito, Ecuador.[1]

The appellants' request presents a novel issue for this Court: may the Court award a COL increase to the $125 statutory maximum hourly rate for work performed outside the United States and in a location for which the U.S. Bureau of Labor Statistics does not publish a Consumer Price Index for all Urban Consumers (CPI-U)?  The Court holds here that it may do so.  However, because appellants have not adequately supported their proposed method for calculating a COL increase for work that Mr. Hoffman performed in Quito, the Court declines to adopt it and will reduce the requested rate for that work to the $125 statutory maximum.  Consequently, the Court will grant Mr. Swanagan's EAJA application in the reduced amount of $4,021.29, and Mr. Turman's in the reduced amount of $6,771.61.

## I. BACKGROUND

On January 14, 2020, the Court granted a joint motion for partial remand (JMPR) of that portion of an October 29, 2018, Board of Veterans' Appeals (Board) decision that denied Mr. Swanagan's claim for service connection for left and right hip conditions and urinary incontinence and declined to reopen his previously denied claims of service connection for left and right ankle arthrosis.  On February 12, 2020, Mr. Swanagan filed a timely application for attorney fees and expenses under EAJA in the amount of $4,117.82, including, in pertinent part, $265.28 for 1.35 hours of work that Mr. Hoffman performed while in Quito, at a requested hourly rate of $196.50. *See* Swanagan Application for Attorneys' Fees and Expenses (Swanagan EAJA Application).

Similarly, on February 3, 2020, the Court granted a JMPR of that portion of an August 23, 2018, Board decision that denied Mr. Turman a compensable evaluation for his service-connected hypertension.  On February 10, 2020, Mr. Turman filed a timely application for attorney fees and expenses under EAJA in the amount of $7,154.14, including, in pertinent part, $1,051.28 for 5.35

---

[1] At oral argument, the Secretary, in response to questioning, indicated that he might have characterized Mr. Hoffman's work in Quito as completed in a temporary location and therefore eligible for a COL increase at the Washington, D.C., rate.  *See* Oral Argument (OA) at 54:36-54:54 *Swanagan v. McDonough*, U.S. Vet. App. No. 19-1350(E) and *Turman v. McDonough*, U.S. Vet. App. No. 19-3258(E) (oral argument held September 11, 2020).  But because the Secretary did not object in pleadings or at oral argument to Mr. Hoffman's request that the work performed in Quito be compensated at the appropriate rate for that location, the Court will accept Mr. Hoffman's assertion that he was not in Quito on a temporary basis.

hours of work that Mr. Hoffman performed while in Quito at a requested hourly rate of $196.50. *See* Turman Application for Attorneys' Fees and Expenses (Turman EAJA Application).

In both cases, the Secretary concedes that EAJA fees are warranted and that the items for which appellants seek awards of fees and expenses, including the number of hours expended by the attorneys involved, are appropriate. Additionally, the Secretary does not oppose appellants' voluntary election to use dates prior to the midpoint in calculating hourly rates. The only issue in contention is the hourly rate requested for work performed in Quito. The Secretary asks that the Court reduce the hourly rate for the work Mr. Hoffman performed in Quito to $125, the statutory maximum. In Mr. Swanagan's case, that results in a reduction of $96.53, for a total proposed EAJA award of $4,021.29. *See* Secretary's Response to Mr. Swanagan. In Mr. Turman's case, that results in a reduction of $382.53, for a total proposed EAJA award of $6,771.61. *See* Secretary's Response to Mr. Turman.

In June 2020, the Court granted appellants' request that their EAJA applications be consolidated for the purpose of addressing their common argument regarding the availability of a COL increase over the $125 statutory maximum hourly rate for work Mr. Hoffman performed in Quito. The matters were then referred to a panel of the Court to address this issue of first impression.

## II. ARGUMENTS

Appellants acknowledge that, under this Court's holding in *Speigner v. Wilkie*, 31 Vet.App. 41, 50 (2019), COL increases to the $125 statutory maximum hourly rate are based on the location where the work was performed. *See* Swanagan EAJA Application at 4.[2] And with respect to work performed in the United States, they applied the CPI-U to calculate the various hourly rates requested for work performed in Alexandria, Virginia; Columbia, Maryland; Niceville, Florida; and Washington, D.C. *Id*. at 3-4 They request a COL increase for work performed in Quito, as well, seeking an hourly attorney fee rate of $196.50. *Id*. at 6.

Appellants argue that allowing COL increases for work performed outside the United States increases service to military families and veterans. *See* Swanagan Reply at 5-7. First, they

---

[2] The substantive arguments made in appellants' pleadings are identical. Similarly, the arguments made in the Secretary's response pleadings are identical. Going forward, unless there is a material difference between the pleadings as to each appellant, the Court will cite to Mr. Swanagan's pleadings and to the Secretary's response in that matter.

assert that providing COL adjustments to the default hourly rate is necessary to support counsel willing to relocate outside the United States to better serve veterans living abroad. *See id*. at 5. For example, Mr. Hoffman "is staffing a new . . . office in Quito, Ecuador, to serve U.S. veterans living in South America." Swanagan EAJA Application at 4. Second, they argue that denying COL increases for work performed outside the United States by attorneys who relocate overseas with their servicemember spouses disadvantages those members of the veterans bar and the clients that they serve. *See* Swanagan Reply at 5-7.

As for how a COL increase would be calculated for work performed in Quito, appellants argue that the United States is not the only country capable of computing a reliable CPI. *Id*. at 2. And with respect to Ecuador, in particular, they assert that it uses the same methodology as the United States in calculating its CPI and that, because its currency is the U.S. dollar, there is no need to engage in complicated exchange rate calculations. *Id*. at 2-3. But they explain that, due to a period of extraordinary inflation in Ecuador since March 1996, calculating a COL increase using the method prescribed in *Elcyzyn v. Brown*, 7 Vet.App. 170, 181 (1994), which is used to calculate COL increases for work performed in the United States, and applying Quito's CPI, results in an hourly rate of $1,678.77; they acknowledge that this rate is unreasonable. Swanagan EAJA Application at 4-5.

As for whether alternative indices to the CPI-U may be used to calculate COL increases for attorney work performed outside the United States, appellants note that the relevant portion of the EAJA statute, 28 U.S.C. § 2412(d)(2)(A), does not mandate that courts use any particular data source in calculating a COL increase to the $125 statutory maximum hourly attorney rate. Swanagan Reply at 4. They propose using, instead, a combination of the Department of Defense (DoD) and United Nations (UN) indices to obtain "a more accurate EAJA [COL] adjustment." Swanagan EAJA Application at 4.

With respect to the COL allowance calculations used by DoD, appellants explain that each duty station is assigned an index. Quito is assigned an index of 130, which is 4.8% more than the 124 index DoD assigns for Anchorage, Alaska. Appellants contend that increasing the Urban Alaska CPI-U by 4.8% for the time period at issue here results in a proposed hourly rate of $213.00 for Quito. *Id*. at 5. UN COL allowance calculations generally follow the same pattern. The UN index for Washington, D.C., for the relevant time period is 88.6, and the index for Quito is 77.7,

4

which is 14% less. Decreasing the Washington, D.C., CPI-U by 14% for the time period at issue results in an hourly rate of $180.00. *Id*.

The appellants propose that the Court ignore the unreasonable hourly rate created by applying the *Elcyzyn* method and the CPI produced by Ecuador and, instead, average the hourly rates calculated using the DoD and UN indices and award attorney fees at an hourly rate of $196.50 for work performed in Quito. *Id*. at 6. As further support for their proposed method of calculating the COL increase for Quito, appellants note that their proposed rate is similar to the rate for El Paso, Texas, and assert that, based on counsel's personal experience, "the prices of goods are similar" in both locations. Swanagan Reply at 5.

In the alternative, appellants assert, for the first time in their replies to the Secretary's responses to the initial EAJA applications, that the Court should abandon altogether its current method for calculating hourly rates for *all* EAJA cases, as well as its method for calculating the midpoint of litigation. *Id*. at 7-15. Appellants assert that determining the location of the attorney is irrelevant to protecting litigants' purchasing power because appellants to the Court are not limited to their local market and can choose any qualified attorney. *Id*. at 8. They further assert that the *Elcyzyn* method "frequently results in laughable rate comparisons between localities" because it does not accurately reflect COL variations between different locations. *Id*. at 11. Similarly, they assert that, because the COL generally rises, using a midpoint for calculating the COL increase "creates a windfall for those months preceding and a misfortune for those months following the midpoint." *Id*. at 12. They further assert that the current method for determining hourly rates and midpoints is inefficient. *Id*. at 12-13. Instead, appellants propose adopting the U.S. Court of Appeals for the Ninth Circuit's approach of using the annual national CPI-U and the year the work was performed to calculate COL increases. *Id*. at 13-14.

The Secretary agrees that the EAJA statute, 28 U.S.C. § 2412, sets the maximum hourly attorney rate at $125 per hour, unless the Court determines that some factor—such as a COL increase—justifies a higher fee. Secretary's Response at 4. But, the Secretary argues, *Elcyzyn* requires the use of the CPI-U in calculating COL increases and, because the U.S. Bureau of Labor Statistics does not maintain such data for foreign countries, "an increase in the [COL] for the area in which [an] attorney lives and works is unavailable when the attorney in question lives and works in a foreign country." *Id*. at 8 (citing https://www.bls.gov/cpi/ (noting that indexes are only available for the United States, nationally, and for various geographic areas within the United

States)).  The Secretary asserts that the very fact that applying the *Elcyzyn* methodology to Quito leads to absurd results "calls into question whether 28 U.S.C. § 2412 contemplates litigants selecting attorneys located in foreign countries and demonstrates the unworkable nature of the application of the statute to such a scenario."  *Id*. at 14.

The Secretary explains that the purpose of the EAJA Act was to allow an appellant to obtain a sufficiently skilled attorney.  *Id*. at 10.  To that end, COL adjustments to the $125 statutory hourly rate are permitted "so as not to diminish the purchasing power of the citizen seeking representation against the Federal Government," but also to avoid a locality-based windfall to counsel.  *Id*. at 11.  But because there is no CPI-U for locations outside the United States, calculating an hourly rate for foreign locations that is consistent with the purpose of the EAJA Act and complies with prior precedent would require the Court to independently assess whether the statutory rate is sufficient for appellants to find and obtain competent counsel in the foreign location and whether the proposed rate would result in a windfall.  *Id*. at 11-12.

The Secretary further argues that, even if data equivalent to the U.S. CPI-U existed for a foreign country, determining an hourly rate based on that data would require a burdensome set of complex calculations based on the need to apply historical exchange rates to comply with the intent of the EAJA Act: incentivizing representation while avoiding a windfall.  *Id*. at 12-13.  For example, the Secretary asserts, the Court would have to convert the statutory rate into the foreign currency as of March 1996.  *Id*. at 12.  Then any increase in the COL would be calculated, assuming such data were available.  *Id*. at 12-13.  That result would then have to be converted back into U.S. dollars as of the midpoint of the case.  *Id*. at 13.  The Secretary asserts that this task is too complex and burdensome for the Court to consider.  *See id*. at 12-13.

As for appellants' argument that using an average of the hourly rates resulting from the DoD and UN indices avoids the absurdity resulting from the *Elcyzyn* methodology as applied, in this specific case, to a proposed COL increase for work performed in Quito, the Secretary notes that neither the proposal to use DoD and UN indices, nor the proposal to average the resulting rates, has any basis in law.  *Id*. at 15, 18.  Ultimately the Secretary asks the Court to "reject [appellants'] proposal to create from whole cloth an entirely new means of calculating hourly rates, outside of the Court's jurisprudence and unsupported by any other Federal Court."  *Id*. at 19.

## III. ANALYSIS

As previously, noted, this Court has jurisdiction under EAJA to award "reasonable attorney fees" pursuant to section 2412(d)(2)(F). To establish eligibility for an EAJA award, an appellant must file an application within 30 days after final judgment that contains (1) a showing that the appellant is a prevailing party; (2) an assertion that the appellant's net worth does not exceed $2,000,000; (3) an allegation that the Secretary's position was not substantially justified; and (4) an itemized statement of the fees and expenses sought. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 541 U.S. 401, 407-08 (2004); *Owens v. Brown*, 10 Vet.App. 65, 66 (1997). The Secretary does not contest appellants' eligibility for EAJA awards, and the Court accepts their eligibility.

"The Court has wide discretion in the award of attorney fees under the EAJA," *Chesser v. West*, 11 Vet.App. 497, 501 (1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), and "must determine what is a 'reasonable' fee," *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The appellant bears the burden of demonstrating the reasonableness of fees and other expenses. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). In these matters, the Secretary does not contest the reasonableness of the number of hours expended or expenses claimed, and the Court accepts appellants' claims as to those elements.

As for determining the hourly rate, "'[t]he EAJA authorizes the award of the lower of either the prevailing market rate or [the statutory maximum] plus a [COL increase] or other enhancement.'" *Elcyzyn*, 7 Vet.App. at 179 (quoting *Levernier Const., Inc. v. United States*, 947 F.2d 497, 504 (Fed. Cir. 1991)). In *Elcyzyn*, the Court explained that it determines whether a COL increase is warranted by applying an appropriate index to determine whether the COL on "the date on which the legal services were performed" was greater than on the effective date of the governing statutory rate. 7 Vet.App. at 181 (citing *Phillips v. General Services Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991)). The effective date of the current governing statutory maximum hourly attorney rate of $125 is March 29, 1996. *See* Contract with America Advancement Act of 1996, Pub. L. No. 104–121, § 232, 110 Stat. 841, 863 (1996) (codified at 28 U.S.C. § 2412(d)(2)(A)); *see also McDonald v. Nicholson*, 21 Vet.App. 257, 260 (2007). As for the date on which legal services were performed, this Court encourages "the selection of a single mid-point

date," such as the date on which the appellant's principal brief is filed. *Elcyzyn*, 7 Vet.App. at 181. But here, the parties have agreed on dates earlier than the midpoint of their respective appeals as the dates on which legal services were performed, and the Court accepts their agreement. *See* Swanagan Response at 6; Turman Response at 6.

Once the midpoint of the litigation or other date of legal service has been determined, this Court has historically calculated the amount of any COL increase by dividing the relevant CPI-U as of that date by the relevant CPI-U as of March 1996, then multiplying the result by the current statutory EAJA rate of $125 per hour. *See*, *e.g*., *Harvey v. Shinseki*, 24 Vet.App. 284, 291 n.3 (2011) (per curiam order). In *Elcyzyn*, the Court held that "the appropriate [COL] index in determining whether a higher attorney fee under the EAJA is justified is the national CPI-[U] index or the CPI-[U] index for the region or local area where the services were performed." 7 Vet.App. at 181; *see also Mannino v. West*, 12 Vet.App. 242, 244 (1999) (holding that a local CPI-U will be applied when available). More recently, the Court considered CPI-U selection for attorneys working in nontraditional settings, such as those who telework from a residence, and reaffirmed that the CPI-U must correspond to the location where the work was performed. *Speigner*, 31 Vet.App. at 46; *see also Parrott v. Shulkin*, 851 F.3d 1242, 1250 (Fed. Cir. 2017) (agreeing that an attorney's time should have been apportioned among the distinct locations where work was performed, and the CPI applied for each separate locality). And to the extent that appellants applied the above method to work performed within the United States, the Secretary raises no objection. *See* Swanagan Response at 2; Turman Response at 2. Therefore, the Court accepts the agreed-upon hourly rates for all attorney work performed on appellants' behalf within the United States.

As for the hourly rate for work performed in Quito, the Secretary interprets *Elcyzyn's* requirement to use the CPI-U prepared by the Bureau of Labor Statistics—which is only maintained for locations *within* the United States—as an absolute bar to awarding COL increases for work performed *outside* the United States. *See* Swanagan Response at 8-9. In other words, the Secretary's position is that the hourly rate for any and all attorney work performed outside the United States cannot exceed the $125 statutory maximum set in March 1996. Appellants interpret *Elcyzyn* as requiring the use of the CPI-U for locations *within* the United States, i.e., those for which a CPI-U is available, but not foreclosing the use of other methods for determining

8

appropriate COL increases for work performed outside the United States. *See* Swanagan Reply at 4. The Court agrees with appellants.

As appellants note, the EAJA statute grants courts the jurisdiction to increase the statutory $125 attorney fee rate based on an increase in the COL, but it is silent as to how courts should determine such increase. *See* 28 U.S.C. § 2412(d)(2)(A)). The Secretary suggests that, because determining an appropriate COL increase for work performed outside the United States may be complex, Congress could not have intended that the Court consider appellants' request, and the statute's silence on that matter should be interpreted as imposing a geographic limitation on its applicability. *See* Secretary's Response at 12-13. But "courts must presume that a legislature says in a statute what it means," and Congress has not "indicated that the unadorned words" of the statute "are in some way limited by implication." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 254 (1992). Consequently, because nothing in the EAJA statute limits its applicability to work performed in the United States, the Court presumes that requests for COL increases for attorney work are not geographically limited.

As for proceedings in this Court, the Secretary is correct that, in *Elcyzyn*, the Court stated that the CPI-U "will" be used to determine COL increases. Swanagan Response at 8 (citing 7 Vet.App. at 179). But in 1994, when *Elcyzyn* issued, technology permitting attorneys to securely and routinely represent clients from locations outside the United States was not readily available to the veterans bar, *see* OA at 5:12-5:15 (appellants' assertion that counsel can work anywhere there is Wi-Fi); consequently, the Court was not asked, when it issued *Elcyzyn*, to consider methods for calculating an appropriate COL increase for work performed outside the United States, *see id*. at 26:29-26:34 (the Secretary's concession that "this Court did not begin to use the Internet as its primary means of doing business" until more than a decade after *Elcyzyn* issued).

Notwithstanding the EAJA statute's silence on the matter, the Secretary would nonetheless have us interpret *Elcyzyn* as affirmatively, although implicitly, imposing additional restrictions on EAJA fee requests and excluding the possibility of awarding COL increases for attorney work performed outside the United States, rather than simply not contemplating that possibility. But as the Court acknowledged in *Speigner*, "[a]dvanced technology in the workplace" has altered the work environment, permitting attorneys to work, i.e., competently represent clients, outside the traditional office setting. 31 Vet.App. at 43. And the Secretary, while noting Mr. Hoffman's intent "to open, staff, and operate a legal office in Quito, Ecuador[,] on a full-time basis," Swanagan

9

Response at 6 n.3, raises no concern—nor can the Court discern any—that an attorney working in Quito would be unable to competently represent clients. Therefore, because the EAJA statute neither specifies which indices courts may use to determine COL increases nor limits those increases to work performed within the United States, and because this Court's responsibilities do not extend to anticipating the state of workplace technology a quarter century into the future, the Court cannot read *Elcyzyn's* silence as to work performed outside the United States as an intent to limit the hourly rate for such work to the statutory maximum.

The Secretary further argues that this Court should decline to consider COL adjustments for work performed outside the United States because any method for calculating an increase "is unworkable in light of the complicated and highly dynamic nature of international economics." Swanagan Response at 12. But the question as to how a foreign COL increase would be calculated is separate from the question as to whether consideration of a foreign COL increase is permitted as a matter of law.

Ultimately, nothing in the EAJA statute or this Court's jurisprudence bars consideration of a COL increase to the statutory maximum for attorney work performed outside the United States. However, as with any attorney fee request, appellants bear the burden of demonstrating the reasonableness of their proposed method for calculating the appropriate hourly rate for work Mr. Hoffman performed in Quito, *see Blum*, 465 U.S. at 897, and it is to that question that the Court now turns its attention.

Appellants assert that Ecuador produces a sound and reliable CPI consistent with U.S. methods. Swanagan Response at 2. However, they report that "Ecuador's [COL] has exponentially increased due to its dollarization and rapid industrialization," and, as a result, has increased by approximately 1,423% since March 1996. *Id*. at 3. Appellants acknowledge that using Ecuador's CPI with the *Elcyzyn* method for calculating an increase above the statutory maximum rate results in an unreasonable hourly rate of over $1,900. *Id*. Therefore, appellants argue, something other than the *Elcyzyn* method must be used if they are to justify a COL increase for work performed in Quito. *Id*. at 3-4. Because appellants do not request that this Court consider Ecuador's CPI to determine the appropriate hourly rate for work performed in Quito, the Court will not consider that possibility further. *See Blum*, 465 U.S. at 897.

What appellants propose instead is that this Court accept an entirely novel method for calculating COL increases that consists of (1) identifying the COL allowances for DoD and UN

employees who live in Quito;[3] (2) selecting a U.S. city for which DoD or the UN provides a COL allowance; (3) determining whether the respective Quito COL allowances are more or less than for the selected U.S. city and calculating the percent difference for both DoD and the UN; (4) calculating the hourly rates, including a COL increase under *Elcyzyn*, if the work were performed in the selected U.S. city; (5) adjusting the two results upward or downward by the percent difference between the COL allowances between Quito and the selected U.S. city; and (6) averaging those results to arrive at the requested hourly rate for EAJA purposes. Swanagan EAJA application at 5-6. The Secretary argues that the proposed method lacks any foundation in law and is conceptually flawed. Swanagan Response at 15-19. Here, the Court agrees with the Secretary.

The purpose of EAJA awards is "to (1) ensure adequate representation for those needing to vindicate their rights against the government and (2) minimize the cost of this redress to taxpayers." *Parrott*, 851 F.3d at 1249. And providing COL increases to the statutory maximum hourly rate "assists litigants with meritorious claims in securing suitable counsel, whose costs may exceed national rates." *Id*. "The EAJA . . . requires that the proper rate be calculated with some degree of reasoned precision." *Elcyzyn*, 7 Vet.App. at 179. But at the same time, "[a] request for attorney fees should not result in a second major litigation." *Speigner*, 31 Vet.App. at 49 (citing *Pierce v. Underwood*, 487 U.S. 552, 563 (1988)). Thus, for example, this Court uses a single date during the performance period, usually the midpoint, when determining whether a COL increase is appropriate, rather than requiring separate calculations for each individual date on which service is performed. *Elcyzyn*, 7 Vet.App. at 181; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Here, appellants ask the Court—out of necessity—to deviate from the well-established *Elcyzyn* method and adopt an entirely novel approach to calculating a COL increase to the statutory hourly rate for attorney fees. But they do so without laying the necessary groundwork to demonstrate that their proposed method is consistent with the EAJA's purpose or controlling precedent. They propose a method for calculating hourly fees for work performed in Quito but provide no explanation or citation to authority as to why their proposed methodology results in a reasonable COL increase for EAJA purposes.

---

[3] Appellants report that the U.S. State Department provides COL allowances similar to those provided by the DoD, but did not use State Department allowances when calculating their requested fee for Quito.

11

For example, appellants do not identify what potential indices are available or explain why they selected DoD and UN indices over others. And although the results obtained from the selected indices differ by a remarkable $33 per hour, they cite no evidence supporting their implicit argument that DoD and UN indices, which are used to generate COL allowances for employees, track the CPI-U in a meaningful way such that their use is appropriate to calculate a reasonable COL increase for EAJA purposes. Furthermore, they cite no evidence that the U.S. cities chosen for comparison—Anchorage, Alaska, and Washington, D.C.—are adequately representative and do not reflect a windfall over other options, such as Honolulu, Hawaii, or New York, New York. Finally, they provide no compelling explanation as to why an average of the results from the two different indices is better than either one alone. *See* Swanagan Application at 5-6.

Appellants respond to the Secretary's criticisms of their proposed rate calculation methodology by asserting that data from the sources considered—DoD, UN, and the Department of State—is reliable. Swanagan Reply at 4. That may be true, and the Court certainly hopes that it is. But the accuracy of the data for the purpose of providing what each respective entity believes is appropriate compensation for their employees assigned to work oversees is separate from the question as to whether the data can be used to calculate a reasonably hourly attorney fee for EAJA purposes, and appellants make no attempt to answer that question. Similarly, while each index provides for comparison to a U.S. city, the question as to whether those cities are adequately representative of the relationship between the selected indices and the CPI-U remains unanswered. *See id*. And to the extent that they address their proposal to average the DoD and UN results to arrive at their requested hourly fee, they provide only an unsupported assumption that an average of the two indices is likely more accurate than choosing only one of them. Swanagan Reply at 5; OA at 15:45-15:54.

As noted above, appellants are not precluded by statute or precedent from receiving a COL increase for work performed outside the United States, and the Court is not opposed to considering such requests. Here, appellants propose a method for calculating a COL increase for Quito without providing reasoned answers to the logical questions noted above. The burden is appellants' to demonstrate that their proposed method of calculating such an increase is reasonable, *see Blum*, 465 U.S. at 897, and because they provide inadequate evidence or explanation as to *why* their proposal is reasonable, they have not met that burden. And because appellants have not met their

12

burden to show the reasonableness of their proposed Quito calculations, the Court declines to accept them.

Finally, in their reply, appellants propose, for the first time, that the Court abandon entirely the *Elcyzyn* method of calculating COL increases to the statutory attorney fee and instead adopt the method used in the Ninth Circuit. *See* Swanagan Reply at 7-15. Even if the Court had the authority to do so at this time, *see Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) ("Only the en banc Court may overturn a panel decision."), the Court would decline to consider this argument raised for the first time in reply, *see Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) (stating that "improper or late presentation of an issue or argument [i.e., raised in the reply brief for the first time] . . . ordinarily should not be considered"), *aff'g Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review an argument first raised in the appellant's reply brief).

Appellants have not met their burden to show the reasonableness of the proposed hourly rate for work Mr. Hoffman performed in Quito, namely, 1.35 hours of work for Mr. Swanagan and 5.35 hours of work for Mr. Turman. Therefore, the Court will use its discretion to award attorney fees at the statutory rate of $125 for that work. *See Pierce*, 487 U.S. at 571. As the Secretary raises no other objection to the EAJA requests addressed herein, the Court will adjust the requests accordingly and grant Mr. Swanagan's EAJA application in the reduced total amount of $4,021.29 and Mr. Turman's in the reduced total amount of $6,771.61.

## IV. CONCLUSION

Upon consideration of the foregoing, Mr. Swanagan's EAJA application is GRANTED, IN PART, in the reduced total amount of $4,021.29 for attorney fees and expenses, and Mr. Turman's EAJA application is GRANTED, IN PART, in the reduced total amount of $6,771.61 for attorney fees and expenses.